UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CROSSROADS COMMUNICATIONS,   :
OF OLD SAYBROOK, LLC,                         :
     Plaintiff,                                   :
                          :        Case No: 3:03cv459 (PCD)
  vs.                                                        :
                          :
TOWER VENTURES, INC.,                     :
     Defendant.                              :

**RULING ON MOTION TO DISMISS**

Defendant moves to dismiss [Doc. No. 10] Counts Two, Three, and Four of Plaintiff's

Complaint.  For the reasons stated herein, Defendant's Motion is **granted in part**, **denied in**

**part**.

I.     BACKGROUND:

Plaintiff filed the present Complaint alleging breach of contract seeking monetary

damages (Count One), breach of contract seeking specific performance (Count Two), breach of

the implied covenant of good faith and fair dealing (Count Three), and violation of the

Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 42-11a, et seq. (Count

Four).

Plaintiff owned parcels of land on Springbrook Road in Old Saybrook, CT ("the

Springbrook Road Property").  This property included an auxiliary radio tower and an

undeveloped adjacent parcel of land.  It was subject to a mortgage and a note dated October 1996

in favor of the prior owner Del Raycee ("the Raycee Mortgage" and "the Raycee Note").  Both

were executed in connection with Plaintiff's acquisition of the Springbrook Road Property.  The

terms of the Raycee Note required Plaintiff to make mortgage payments to Raycee. The Raycee

Mortgage secured payment of the Note.

On or about September 20, 2001, Plaintiff and Defendant entered into an agreement ("the

September 2001 Agreement") with respect to the development of the Springbrook Road Property.

The Agreement was headed "Agreement re: Loan Repayment, Mortgage Discharge and Tower

Site Lease." The Agreement set forth that Defendant desired to construct a communications

tower and related facilities on the Springbrook Road Property and that Plaintiff was amenable to

leasing the Property to Defendant for the purpose of constructing and operating a communication

facility thereon.

According to the Agreement, Defendant was obligated to seek all necessary approvals for,

and then construct, a new communications tower on the Springbrook Road Property. Defendant

was to apply for the necessary approvals no later than forty-five days after the execution of the

agreement - excluding all those approvals that by their terms could not be applied for in the

specified time period or which require other approvals to be obtained first. Once the requisite

approvals were obtained, Defendant was obligated to enter into a ten year ground lease,[1] paying

$150,000 up front and annual rent beginning at $18,000/year, increasing yearly at 4% on the

anniversary of the start date, with a share of the revenue received by Defendant from tenants

leasing space on the new communications tower also to be paid to Plaintiff.[2] The ground lease

was set for an initial term of ten years, with automatic renewals for additional five year periods.

---

[1]    Under the ground lease Defendant was to begin paying rent sixty days from the date that Defendant obtained all the necessary approvals and those approvals were no longer appealable, or the first day of the month after the month in which Defendant began construction on the site.

[2]    Defendant was required to pay 25% of rents received from the first, second, and third broadband tenants and 30% from all additional tenants.

The September 2001 Agreement was executed by all parties on or about September 20, 2001,

thus setting the 45-day deadline for all applications for necessary approvals as November 4,

2001.  If certain conditions, including the obtaining of all necessary allowances had not occurred

by July 1, 2002, the Agreement also provided that it could be terminated, so long as the

terminating party was not then in material breach of the Agreement.

Defendant failed to file any applications for the necessary approvals until March of 2002.

By early August 2002, only one application for approval remained pending.  On August 7, 2002,

Defendant sent an overnight letter to Plaintiff purportedly exercising its right to terminate the

Agreement.  Plaintiff refused to honor the termination on the grounds that Defendant was in

material breach of the contract for failing to apply for any approvals prior to March 2002.

However, Defendant offered to alter the terms of the Agreement such that it would be more

favorable to its economic interest and to attempt to avoid terminating the agreement as a whole.

Plaintiff engaged in discussion with Defendant as to possible terms of revision.  Plaintiff alleges

that Defendant's attempts to renegotiate were in bad faith and undertaken in an effort to coerce

Plaintiff into agreeing to terms more favorable to Defendant.  However, while these discussion

took place, Defendant continued to perform under the Agreement until October 2002.

In the meantime, the final approval was obtained at which point Defendant became

obligated to make the necessary payments under the terms of the agreement.  Defendant,

however, continued to claim that further approvals were necessary, but did not actually file

applications for at least one of the approvals it claimed was necessary.

After negotiations for possible revision of the Agreement failed, on October 11, 2002,

Defendant re-confirmed its purported termination of the September 2001 Agreement and refused

to further perform.  Consequently, Plaintiff alleges that Defendant is in breach of the Agreement

for not only failing to file required approval applications, but additionally failure to begin

construction on the Property, failure to execute the ground lease, and failure to make any

payments due under the Agreement.

Plaintiff asserts damages in loss of rent, loss of the $150,000 payment and any use it may

have been put to, loss of further rents from broadband tenants, and costs that Plaintiff must incur

as a result of Defendant's refusal to perform.

## II.    STANDARD OF REVIEW:

A motion to dismiss is properly granted when "it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations." In re Scholastic

Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir. 2001), quoting Hishon v. King & Spalding, 467 U.S.

69, 73 (1984).  A motion to dismiss must be decided on the facts as alleged in the complaint.

Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001).  All facts in the complaint are assumed

to be true and are considered in the light most favorable to the non-movant.  Manning v. Utilities

Mut. Ins. Co., Inc., 254 F.3d 387, 390 n.1 (2d Cir. 2001).

## III.    DISCUSSION:

1.    Count Two - Specific Performance:

In order to be specifically enforceable "a contract must be fair, equitable, certain and

mutual, consistent with policy and made on good consideration." Burns v. Gould, 172 Conn.

210, 214, 374 A.2d 193, 197 (1977); see also Sidor v. Kravec, 135 Conn. 571, 573-74, 66 A.2d

812, 813 (1949); Hurd v. Hotchkiss, 72 Conn. 472, 480, 45 A. 11, 14 (1900); and Platt v.

Stonington Sav. Bank, 46 Conn. 476 (1878) (all holding same).  In Connecticut, specific

performance is a "form of injunctive decree" and as such is an "equitable remedy, with the usual

attributes of such remedies."  Gager v. Gager & Peterson, LLP, 76 Conn. App. 552, 560, 820

A.2d 1063, 1070 (2003).  Accordingly, a party seeking injunctive equitable relief must "allege

facts showing irreparable damage and the lack of an adequate remedy at law."  Stocker v.

Waterbury, 154 Conn. 446, 449, 226 A.2d 514, 516 (1967).  An adequate remedy at law is "a

remedy vested in the complainant, to which he may, at all times, resort, at his own option, fully

and freely, without let or hindrance."  Id.

There is simply nothing in the Complaint that provides a basis to conclude that Plaintiff

has suffered irreparable harm or does not have an adequate remedy at law.  Indeed, Plaintiff does

little more than adopt the facts common to all Counts in setting out Count Two seeking specific

performance.  See Complaint, Count Two.  Plaintiff's only opposition to Defendant's Motion to

Dismiss [Doc. No. 10] is to argue that the record needs to be developed further and that

Defendant's Motion is "premature."  Pl. Mem. Opp. Motion to Dismiss at 11.  Neither this

argument, nor the ability to plead in the alternative, see Pl. Mem. Opp. Motion to Dismiss at 10,

alleviates Plaintiff of its burden to "allege facts showing irreparable damage and the lack of an

adequate remedy at law."  Stocker, 154 Conn. at 449, 226 A.2d at 516.  In its Brief, Plaintiff does

not point to any particular factual questions that need further development or any other facts that

might support a finding of irreparable harm or the inadequacy of Plaintiff's other remedies.

Accordingly, Plaintiff fails to allege facts, that if taken as true, would show irreparable harm or

that monetary damages do not provide an adequate remedy at law and as a result Count Two of

the Complaint is **dismissed**.[3]

      2.      Covenant of Good Faith and Fair Dealing:

Under Connecticut law, "the implied duty of good faith and fair dealing is a covenant

implied into a contract or a contractual relationship." Hoskins v. Titan Value Equities Group,

Inc., 252 Conn. 789, 793, 749 A.2d 1144, 1146 (2000).  Good faith can be used in a variety of

contexts and its meaning can vary given the context.  "Good faith performance or enforcement of

a contract emphasizes faithfulness to an agreed common purpose and consistency with the

justified expectations of the other party; it excludes a variety of types of conduct characterized as

involving 'bad faith' because they violate community standards of decency, fairness or

reasonableness." Warner v. Konover, 210 Conn. 150, 155, 553 A.2d 1138, 1141 (1989).  Bad

faith therefore generally implies "actual or constructive fraud, or a design to mislead or deceive

another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted

by an honest mistake as to one's rights or duties, but by some interested or sinister motive."

Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 501, 504 (1992) (citations omitted).  Proving

bad faith is essential to a claim involving a breach of the covenant of good faith and fair dealing.

Franco v. Yale Univ., 238 F. Supp. 2d 449, 455 (D. Conn. 2002).  Defendant argues that

Plaintiff's Complaint simply does not meet this standard.

---

[3]      Defendant's other arguments need not be reached.  It is noted, however, that the arguments are only loosely based on anything that could be called established Connecticut law.  With respect to its argument concerning the supervision of parties' performance, Defendant cites only to two trial level Connecticut decisions and then resorts to numerous out of state decisions.  Def. Mem. Supp. Motion to Dismiss at 11.  Connecticut law on specific performance is well settled, as cited above, thus there seems no need to resort to the authority Defendant cites.  Defendant's argument concerning the certainty of the Agreement is similarly based on outside authority and the Restatement (Second) of Contracts.  Id. at 11-15.  Nowhere is it sufficiently established in Defendant's Brief that such authority is adopted or considered binding under Connecticut law.

Initially, although it was probably error on Defendant's part, it bears mentioning that

Defendant's reliance on Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988) for the proposition

that conclusory allegations alleging bad faith are not sufficient to sustain its claim is misplaced.

Def. Mem. Supp. Motion to Dismiss at 18.  Not only is the Albert standard a standard that has

been developed in the context of civil rights cases, which is clearly not applicable here, and

imposes a higher standard of pleading with respect to such cases, see e.g Martin v. New York

State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978) ("a complaint consisting of

nothing more than naked assertions, and setting forth no facts upon which a court could find a

violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)"), but the line of

cases Albert relies on has been overturned by the Supreme Court.  See Swierkiewicz v. Sorema,

N.A., 5 Fed. Appx. 63, 64 (2d Cir. 2001) ("It is well settled in this Circuit that a complaint

consisting of nothing more than naked assertions, and setting forth no facts upon which a court

could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)"),

reversed by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1

(2002) ("We hold that an employment discrimination complaint need not include such facts and

instead must contain only a short and plain statement of the claim showing that the pleader is

entitled to relief") (internal citations omitted).  Accordingly, to the extent that Defendant seeks to

hold Plaintiff to a standard greater than notice pleading by citing Albert, that argument is

rejected.  Plaintiff is held only to the general notice pleading standard of Fed. R. Civ. P. 8(a)(2).

At a minimum Plaintiff seeks to cast doubt on the forthrightness with which Defendant

conducted itself in the approval application process.  Plaintiff clearly implies, thus raising the

question, that Defendant's assertions that further applications needed to be submitted before

construction could begin might have been less than honest. See Complaint ¶¶ 31 & 33-35

(Asserting that all approvals were obtained, but that Defendant claimed more were necessary).

And that even if these approvals were necessary, Defendant must have fairly deliberately refused

to apply for them. Complaint ¶ 35. These factual assertions alone raise a sufficient question as

to Defendant's good faith effort to comply with the terms of the Agreement to survive a motion to

dismiss. Plaintiff's other allegations of misconduct need not therefore be reached.

      3.     CUPTA Claim:

      CUPTA states that "[n]o person shall engage in unfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-

110b(a) (LEXIS 2003). In order to determine what is unfair, a court must consider:

> (1) [W]hether the practice, without necessarily having been previously considered
> unlawful, offend  public policy as it has been established by statutes, the common law, or
> otherwise -- whether, in other words, it is within at least the penumbra of some common
> law, statutory, or other established concept of unfairness; (2) whether it is immoral,
> unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to
> consumers [(competitors or other businessmen)]

Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342, 355, 525 A.2d 57, 65

(1987) (alterations in original).

      While it is the case that proof of the elements of fraud (i.e. knowing misrepresentation,

reliance, and damage) are not necessary for a CUPTA claim, see Web Press Services, 203 Conn.

at 362-63, this does not mean that any breach of contract claim rises to the level of a CUPTA

violation. See Boulevard Assocs. v. Sovereign Hotels, 72 F.3d 1029, 1038 (2d Cir. 1995)

("[S]imple contract breach is not sufficient to establish a violation of CUTPA" and collecting

Connecticut state court decisions to that effect); and A. Secondino & Son v. L.D. Land Co., No.

CV 94-0359726, 1994 Conn. Super. LEXIS 3374, *5-6 (December 30, 1994) (collecting cases).

Plaintiff must still show that a deception or violation of public policy occurred which gave rise to

substantial aggravating circumstances surrounding the breach.  See Thames River Recycling v.

Gallo, 50 Conn. App. 767, 788, 720 A.2d 242, 256 (1998) (Upholding jury instruction that

included, "[t]o recover under CUTPA for a simple breach of contract, the plaintiff must show

substantial aggravating circumstances intending to breach").

As discussed above, Plaintiff raises sufficient questions surrounding Defendant's conduct,

particularly in relation to the approval process to survive a motion to dismiss.  Plaintiff alleges

that all approvals were applied for and received, yet Defendant asserted more were necessary

without ever applying for such approvals.  Complaint ¶¶ 31 & 33–35.  Plaintiff should at least be

allowed to further explore these accusations.  Accordingly, Defendant's Motion to Dismiss Count

Four is **denied**.

**IV.    CONCLUSION:**

For the reasons state herein, Defendant's Motion [Doc. No. 10] is **granted in part**,

**denied in part**.  Count Two is dismissed, but Counts Three and Four shall stand.

SO ORDERED.

Dated at New Haven, Connecticut, December  19 , 2003.

_____/s_____
Peter C. Dorsey, U.S. District Judge
United States District Court