## AGREEMENT RE: LOAN REPAYMENT, MORTGAGE
## DISCHARGE AND TOWER SITE LEASE

THIS AGREEMENT RE: LOAN REPAYMENT, MORTGAGE DISCHARGE AND TOWER SITE LEASE (the "Agreement") is made and entered into as of the 20th day of September, 2001 by and between **CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC**, a Connecticut limited liability company ("Crossroads"); and **TOWER VENTURES, INC.**, a Rhode Island corporation ("TVI").

### RECITALS:

WHEREAS, TVI desires to construct a communications tower and related facilities (the "Communications Facility") on certain parcels of real estate which are owned by Crossroads, located in Old Saybrook, Connecticut, and more particularly described in Exhibit A, attached hereto and by this reference made a part hereof (the "Property"); and

WHEREAS, Crossroads is amenable to leasing a portion of the Property (the "Tower Site") to TVI for the purpose of permitting TVI to construct and operate the Communications Facility thereon; and

WHEREAS, upon TVI's completion and approval of its due diligence review of the Property and acquisition of all permits and approvals which are required for the construction and operation of the Communications Facility on the Tower Site, TVI will: (i) payoff the outstanding principal and interest due under that term promissory note (the "Raycee Note") dated October 25, 1996 by Crossroads in favor of Del Raycee ("Raycee"), which Raycee Note is presently secured by that Mortgage Deed encumbering the Property dated October 25, 1996 by Crossroads in favor of Raycee and recorded in the Old Saybrook Land Records in Book 339, Page 291 (the "Raycee Mortgage"); and (ii) enter into a ground lease with Crossroads pursuant to which TVI shall have the right to construct and operate the Communications Facility on and at the Tower Site and the right to utilize certain access, utilities and guy wire and anchor easements described therein; and

WHEREAS, in consideration thereof, Crossroads shall: (i) obtain from Raycee a discharge of the Raycee Mortgage; (ii) execute and deliver to TVI a promissory note in the principal amount of the sum paid by TVI to Raycee to effect the payoff of the Raycee Note; (iii) execute and deliver to TVI a mortgage deed, security agreement and assignment of leases and rents encumbering Property to secure Crossroads' payment obligations under the note described in subsection (ii) of this paragraph; and (iv) enter into the ground lease in subsection (ii) of the immediately preceding paragraph.

NOW THEREFORE, in consideration of the foregoing premises and the mutual promises set forth herein and the payment by TVI to Crossroads of $10.00, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1. Acquisition of Approvals.   Upon execution and delivery of this Agreement by each of the parties hereto, TVI shall apply for as expeditiously as possible, but in no event later than forty-five (45) days after the execution of this Agreement by each of the parties hereto, all approvals, permits, variances, consents, waivers, filings, certificates, certifications and other instruments and documentation from any and all federal, state, local and other governmental entities, and any and all departments and agencies thereof, which are required for and/or otherwise facilitate the construction and operation of the Communications Facility on and at the Tower Site (collectively, the "Approvals"), excluding only those Approvals which by their terms cannot be applied for within such 45 day period and/or until other Approvals are first obtained, provided that such subsequent Approvals shall be applied for as expeditiously as possible, and TVI/and shall thereafter use its best efforts diligently to obtain all such Approvals.   Crossroads shall reasonably cooperate with TVI in connection with TVI's acquisition of the Approvals, provided that all fees, costs and expenses incurred with regard to the Approvals shall be borne exclusively by TVI.

2. Due Diligence.  Upon execution and delivery of this Agreement by each of the parties hereto, TVI may order with respect to the Property: (i) a title commitment for lessee's title insurance; (ii) a survey and/or (iii) a Phase I Environmental Assessment and NEPA Screen.  TVI shall also have the right to inspect (at TVI's expense) the Property and the improvements presently located thereon, and to have conducted such engineering studies and other investigations as it reasonably may deem appropriate, and to review copies

of all documentation (the "Property Documentation") in Crossroads' possession relating to the Property (collectively, the "Due Diligence Review"). Crossroads hereby covenants and agrees that it shall deliver to TVI copies of all of the Property Documentation within twenty days after the date hereof.

3. Releases and Non-disturbance Agreements. If the Due Diligence Review discloses or TVI otherwise becomes aware of any liens, claims or encumbrances upon the Property and/or any of the improvements and fixtures located thereon (collectively, the "Encumbrances"), TVI may seek to obtain from the holders of such Encumbrances, including, but not limited to, Webster Bank: (i) subordination, attornment and non-disturbance agreements, the form and terms of which shall be acceptable to TVI in its reasonable discretion (the "Non-Disturbance Agreements"); and/or (ii) releases of the Property and all other assets securing Crossroads' obligations under the Note (as such term is hereinafter defined) pursuant to the Mortgage (as such term is hereinafter defined), provided that the form and terms of such releases shall be acceptable to TVI in its reasonable discretion (the "Releases").

4. Payoff of Raycee Note and Discharge of Raycee Mortgage.

(a) Upon satisfaction of each of the Conditions Precedent (as such term is hereinafter defined) in accordance with the terms hereof, and subject to the terms of Section 4(b) hereof, TVI (and, if applicable pursuant to Section 4(b) hereof, Crossroads) shall pay to Raycee the principal and interest then outstanding under the Raycee Note, in full satisfaction and payment thereof, upon receipt from Raycee of a executed and recordable discharge and termination of the Raycee Mortgagee, which discharge shall in form and substance be acceptable to TVI in its sole discretion, and receipt from Crossroads of the Note and the Mortgage. TVI shall not be obligated in any manner whatsoever to payoff the Raycee Note until each of the Conditions Precedent has been satisfied in accordance with the terms hereof. For purposes of this Agreement, the term "Conditions Precedent " shall mean: (i) TVI's receipt of all of the Approvals; (ii) TVI receipt of all of the Non-disturbance Agreements (if any); (iii) TVI's receipt of all of the Releases (if any); and (iv) TVI's acceptance and approval of the results of it's Due Diligence Review.

(b) Notwithstanding anything to the contrary set forth herein, the total sum (including both principal and interest) that TVI shall be required to pay to Raycee in order to effect the payoff of the Raycee Note shall not under any circumstances exceed One hundred Fifty Thousand Dollars ($150,000). If the total sum (including principal and interest) that is required to payoff the Raycee Note (i.e. the "Raycee Payoff Amount") exceeds $150,000, Crossroads hereby covenants and agrees that it shall pay to Raycee a sum equal to the amount by which the Raycee Payoff Amount exceeds $150,000, simultaneously with the payment made by TVI to Raycee pursuant to Section 4(a) hereof.

5. Note and Mortgage. Upon satisfaction of the Conditions Precedent in accordance with the terms hereof, simultaneously with the payoff of the Raycee Note and discharge of the Raycee Mortgage, Crossroads shall execute and deliver to TVI: (i) a promissory note (the "Note") in the principal amount equal to the amount paid by TVI to Raycee to satisfy and pay in full the Raycee Note pursuant to Section 4 hereof, which Note shall be exactly in the form attached hereto as Exhibit C with the blank spaces therein completed in accordance with the terms hereof; and (ii) a mortgage deed, security agreement and assignment of leases and rents (the "Mortgage") securing the payment and performance of Crossroads obligations under the Note and otherwise to TVI, which Mortgage shall be exactly in the form attached hereto as Exhibit B with the blank spaces therein completed in accordance with the terms hereof. Notwithstanding anything to the contrary set forth herein, Crossroads' obligations to execute and deliver the Note and the Mortgage are hereby made expressly contingent upon TVI's simultaneous payoff of the Raycee Note in accordance with the terms of Section 4 hereof.

6. Ground Lease. Upon satisfaction of the Conditions Precedent in accordance with the terms hereof, immediately after Crossroads execution and delivery to TVI of the Note and the Mortgage, Crossroads and TVI shall execute and deliver to each other a ground lease (the "Lease") pursuant to which TVI shall lease the Tower Site from Crossroads and have the right to use certain easements and rights of way across the Property described in the Lease. The Lease shall be exactly in the form attached hereto as Exhibit D with the blank spaces therein completed in accordance with the terms hereof. TVI shall not be obligated in any manner whatsoever to execute, deliver and perform in accordance with the Lease until each

of the Conditions Precedent has been satisfied in accordance with the terms hereof and the Note and the Mortgage have been executed and delivered to TVI.

7. <u>Waiver of Conditions Precedent</u>.    TVI may waive all or any of the Conditions Precedent, provided that such waiver is set forth in a written instrument which has been executed by TVI.

8. <u>Outside Closing Date</u>.    If all of the Conditions Precedent have not been satisfied by July 31, 2002, then either Crossroads or TVI may terminate this Agreement so long as the terminating party is not then in material breach of this Agreement. Upon termination of this Agreement pursuant to this Section 10, neither of the parties hereto shall have any further obligations or liabilities hereunder, and this Agreement shall be void and of no further force and effect.

9. <u>Miscellaneous</u>.

(a) All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given when either personally served or mailed by certified or registered mail, return receipt requested, or overnight courier service, at the addresses set forth on the signature page of this Agreement or to such other address or to such other persons as TVI or Crossroads shall have last designated by written notice to the other parties.

(b) <u>Benefits</u>. This Agreement shall inure to the benefit of and be binding upon the parties and their respective permitted successors and assigns.

(c) <u>Governing Law</u>. This Agreement shall be governed by and construed according to the internal laws of the State of Connecticut.

(d) <u>Assignment</u>. Neither Crossroads nor TVI may assign this Agreement or any rights or obligations hereunder without the consent of the other party hereto.

(e) <u>Modification</u>. Except as provided in Section 9 hereof, this Agreement may not be amended, waived, modified or supplemented at any time, except by a writing executed by the parties hereto. No amendment, supplement or termination of this Agreement shall affect or impair any rights or obligations which have heretofore matured hereunder.

(f) <u>Cumulative Rights; Waiver</u>. Each and every right granted to a party hereunder, or in any other document contemplated hereby, or delivered hereunder or executed concurrently herewith, or by law or equity, shall be cumulative and may be exercised at any time, or from time to time. No failure on the part of any party to exercise, and no delay in exercising, any right shall operate as a waiver thereof, nor shall any single or partial exercise by any party of any right preclude any other or future exercise of such right or the exercise of any other right.

(g) <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which, when executed, shall be deemed an original instrument, but all of which taken together shall constitute one and the same agreement.

(h) <u>Severability</u>. Any term or provision of this Agreement which is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Agreement.

**[Signature Block Appears on the Next Page]**

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed, sealed and delivered as of the date first above written.

| WITNESS: | CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC |
|---|---|
| *Filomena Simmons* (signature) | By: *(signature)* <br> Don DeCesare <br> President <br><br> Address: 157 North Seir Hill Rd. <br> Norwalk, CT. 06850 |
| WITNESS: | TOWER VENTURES, INC. <br><br> By: _____ <br> Robert J. Maccini <br> President <br><br> Address: 170 Westminster Street <br> Suite 701 <br> Providence, R.I. 02903 |