UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC, | : : | |
| Plaintiff, | : : | CIVIL NO. 3:03CV459(PCD) |
| VS. | : : | |
| TOWER VENTURES, INC., | : | OCTOBER 28, 2004 |
| Defendant. | : : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Crossroads Communications of Old Saybrook, LLC ("Crossroads") respectfully submits this memorandum of law in opposition to the motion for summary judgment filed in this matter by defendant Tower Ventures, Inc. ("TVI"). In this memorandum, we discuss the reasons why we believe summary judgment is inappropriate in this matter, and why there are essential questions of fact that must be resolved by a jury.

I.  **INTRODUCTION**

The dispute in this case turns on an agreement between the parties to construct and operate a communications tower. Plaintiff Crossroads, which is in the business of running radio stations, contracted with TVI, a cellular tower development company, to have TVI build and lease a communications tower on a parcel of land in Old Saybrook that currently contains an auxiliary radio tower for one of Crossroads' stations. The dispute before the Court arises from TVI's attempt to terminate that contract, and Crossroads'

claim that TVI breached the contract, as it had no right to terminate.

As we discuss below, many of the relevant facts and contractual provisions are not in dispute. It is undisputed that the agreement in question permitted a party to terminate for certain reasons -- so long as that party was not in material breach of the contract. TVI concedes it was in breach of the contract at the time it attempted to terminate. It is also undisputed that, if TVI was in material breach, it could not terminate the contract. The key question, therefore, is whether TVI's breach was material. As we discuss below, numerous authorities have held that the question whether a party is in material breach is a question of fact. The presence of such a critical question of fact as to the nature of TVI's breach precludes the granting of defendant's summary judgment motion.

## II. **RELEVANT ADDITIONAL FACTS**

As noted above, the majority of facts relevant to this case are not in dispute. Most of the pertinent facts are discussed in Defendant's Memorandum of Law in Support of Summary Judgment dated August 9, 2004 ("Def. Mem."). Rather than burden the Court with a recitation of the same facts, we discuss below only those matters as to which there is significant disagreement, or where further elaboration is necessary.

Crossroads is in the business of operating radio stations. It owns and operates two stations in Connecticut -- WLIS-1420 in Old

Saybrook and WMRD-1150 in Middletown. Defendant TVI is in the business of developing communications towers, principally for use in the cellular telephone industry. The agreement at issue in this case centers on a parcel of land adjacent to WLIS in Old Saybrook, where an auxiliary radio tower for that station is currently located. The agreement contemplated replacement of that tower with another tower that could serve both as an auxiliary radio tower, and a possible site for cellular communications equipment.

The agreement between the parties called for TVI to obtain all approvals necessary to construct the tower. Def. Mem. at 2; Agreement, ¶ 1.[1] It also required TVI to apply for these approvals "as expeditiously as possible, but in no event later than forty-five (45) days after the execution of [the] Agreement by each of the parties." Id. This time limit was not included in early drafts of the agreement. DeCesare Aff't, ¶ 6 and Exhibit A thereto, ¶ 1. Mr. DeCesare requested that a finite period be added to the agreement for TVI to apply for all necessary approvals. Id. at 7. He initially requested a shorter period, but ultimately the parties agreed on a 45-day limit for the filing of such approvals. This time limit was an essential and important term of the agreement, in Mr. DeCesare's view, because he wanted to ensure that TVI would quickly carry out its contractual responsibility to seek and obtain the necessary approvals for the tower. Id. Mr. Maccini

---

[1] The agreement is attached as an exhibit to defendant's moving papers, as are the various deposition transcripts on which we rely in this memorandum.

3

concedes that the 45-day requirement was added to the agreement at the request of Mr. DeCesare.  (Maccini, 58-59).

In TVI's memorandum, and in the supporting affidavit of Keenan Brinn, the TVI employee primarily responsible for carrying out TVI's obligations under the agreement, some of the delay in the permitting process is ascribed to an alleged inability to obtain a FAA "no hazard" letter from Crossroads, despite repeated requests.  Def. Mem. at 3 n.3.  Mr. DeCesare disputes that there was any delay by Crossroads' part, or any refusal to comply with requests for information.  Mr. DeCesare does not recall being asked for a FAA letter several times by Mr. Brinn.  DeCesare Aff't, ¶ 12.  He told Mr. Brinn that such a letter was not in the radio station's files.  He further told him that, to his knowledge, such a letter was not required, as the existing tower was less than 200 feet high.  Id; see also Maccini at 148 (200 foot requirement).  Mr. DeCesare asked Mr. Brinn several times between September 2001, when the agreement was signed, and the end of that year whether Mr. Brinn needed further documentation from Crossroads.  Mr. Brinn replied that he did not.  DeCesare Aff't, ¶ 13.

The history of the approval process is accurately recounted in TVI's memorandum, and plaintiff does not dispute those historical facts.  There is disagreement, however, as to whether the tower could have been built after the final approval was obtained from the Old Saybrook Zoning Commission on September 3, 2002, and after the period for appealing that approval passed.  According to TVI,

4

"[e]ven at that point, however, before it could build the tower, Crossroads still needed to obtain FAA clearance and an approval from the Connecticut Siting Council to operate the new tower as a telecommunications tower."  Def. Mem. at 8-9 (citing Brinn Aff. at 8).  However, Attorney William Childress, the experienced local land use lawyer who represented TVI in the approval process, testified that after the appeals period for the Zoning Commission approval had passed, TVI could have obtained a building permit for the tower and constructed it as planned.  (Childress, at 68).  Siting Council approval would be necessary only at a point in the future when TVI wished to attach telecommunications facilities to the tower.  (Childress, at 16-17).

### III. ARGUMENT

1. General Legal Standard

    The principles governing consideration of summary judgment motions are well established.  Summary judgment should be granted only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett; 477 U.S. 317, 322 (1986).  The court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor. See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).  In determining whether summary judgment is

appropriate, the court resolves all ambiguities and draws all reasonable inferences against the moving party. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). Issues of credibility cannot be resolved in the context of a motion for summary judgment. United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).

2.  TVI Breached the Agreement By Not Applying For
    All Necessary Permits in the Specified Period of Time

As discussed above, the parties' agreement clearly assigned to TVI the responsibility to apply for and obtain all permits necessary to construct the tower. The agreement further required that all necessary applications for approval be sought as expeditiously as possible, but in no event later than 45 days after its date of execution -- September 20, 2001. Crossroads does not and cannot dispute that it breached this obligation under the agreement. Mr. Brinn conceded TVI's failure to comply with the 45-day requirement. (Brinn at 98, 101-02)).

3.  A Material Breach Agreement Would Preclude TVI
    From Exercising Any Right of Termination Under the Agreement

It is likewise undisputed, under the plain language of the agreement, that a party in material breach of the contract could not exercise a right of termination. Paragraph 8 of the agreement, upon which TVI relied, provides: "If all of the Conditions Precedent have not been satisfied by July 31, 2002, then either

6

Crossroads or TVI may terminate this Agreement <u>so long as the terminating party is not then in material breach of this Agreement</u>."  Agreement, ¶ 8 (emphasis added).

Based on this contractual language, TVI does not and cannot dispute that, if its breach of the agreement was material, it had no right under this provision to terminate the agreement, as it purported to do in its letter of August 7, 2002.  Thus, the critical question at the core of this dispute is whether TVI's breach was material.

4.  <u>The Critical Question of Whether TVI's Breach of the Agreement Was Material Presents A Question of Fact That Must Be Resolved By the Trier of Fact</u>

TVI argues at length in its memorandum that it was not in material breach of the agreement at the time of termination.  Def. Mem. at 12-17.  There is abundant authority, however, including some of the authority on which TVI relies, that as a general matter the question whether a contract breach is material is a question of fact.

TVI notes that "Connecticut courts analyzing whether a claimed breach is material focus on the purpose of the parties entering into a contract and their expectations."  Def. Mem. at 13.  One of the authorities on which TVI relies in its argument as to material breach is <u>Prete & Son Construction v. Town of Madison</u>, 1994 WL 570243 (Superior Court 1994)(Healey, J.).  In <u>Prete</u>, the court noted that Connecticut courts have typically looked to the multi-factor test set forth in Restatement (Second) of Contracts § 241 in

7

determining whether a contractual breach is material.  Id. at 14-15.  The court further noted, however, that "[t]he materiality of a breach is usually a question of fact."  Id. at 15.  The existence of a material question of fact, of course, would preclude the granting of defendant's motion for summary judgment.

The general proposition stated in Prete, that the materiality of a breach presents a question of fact, finds abundant support both in other caselaw and academic treatises.  One pair of commentators has stated:  "There is no simple test to ascertain whether or not a breach is material. . . . Materiality of breach is ordinarily a question of fact."  J. Calamari & J. Perillo, The Law of Contracts § 11-18(a), at 459-60 (3d ed. 1987).  See also 23 Williston on Contracts § 63:3, at 440-41 & n.34 (4th ed. 2002).

Likewise, in Westbrook Insurance Co. v. Jeter, 117 F.Supp.2d 139 (D. Conn. 2000), the question before the court on a motion for summary judgment was whether an insured had substantially or materially breached its duty to cooperate under a policy of insurance.  Judge Nevas denied summary judgment in that case, holding that the question whether such a breach is material or substantial "is normally a question of fact to be determined by the trier of fact."  Id. at 142.  Other courts attempting to assess the nature of a breach have also concluded that it presents a question of fact.  See, e.g., Miller v. Mills Construction, Inc., 352 F.3d 1166, 1172 (8th Cir. 2003) ("Whether a party's conduct amounts to a material breach is a question of fact"); Heidtman Steel Products,

8

Inc. v. Compuware Corp., 164 F.Supp.2d 931, 936 (N.D. Ohio 2001)(denying summary judgment; "To warrant rescission of a contract, there must be a material breach affecting an essential part of the contract . . . Whether a breach is material is question of fact"); McKnight v. Midwest Eye Institute, 779 S.W.2d 909, 915 (Mo. App. 1990).

The multi-factor test under Section 241 of the Restatement, which the Connecticut courts have looked to for guidance as to the materiality of a contract breach, requires of consideration of questions that are typically factual in nature, such as the reasonable expectations and good faith of the parties. The first relevant factor under Section 241 is "the extent to which the injured party will be deprived of the benefit which he reasonably expected." Bernstein v. Nemeyer, 213 Conn. 665, 670, 570 A.2d 164 (1990). Here, as stated in Mr. DeCesare's affidavit, one critical benefit he expected, and specifically bargained for, under the TVI agreement was an expeditious pursuit of necessary approvals to build the tower. His reasonable belief, and the expectation of the parties generally in entering into the contract, presents an issue for the trier of fact.

Likewise, another key factor under Section 241 is "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Bernstein, Id. at 670. Crossroads contends here that TVI did not act in good faith. The facts support this contention. TVI

unquestionably breached its contractual obligation to apply for necessary permits within 45 days of the contract's execution. This delay, in turn, caused the entire permitting process to be delayed. Then, having so delayed the process, TVI sought to terminate its agreement with Crossroads because necessary permits had not been obtained by a date specified in the contract -- a delay for which it was responsible. Crossroads believes that these facts on their faith establish a lack of good faith, but for purposes of this motion the Court need only find a question of fact as to TVI's good faith and fair dealing.

The final factor that bears consideration here is the context in which the question of "material breach" arises. The typical question that arises as to material breach is whether the non-breaching party (here, Crossroads) is permitted to terminate its performance under the contract because the other party has materially breached the agreement. See, e.g., Heidtman Steel, 164 F.Supp.2d at 936 (only material breach will warrant rescission of the contract). Here, by contrast, Crossroads did not seek to avoid the contract, or to excuse its own non-performance. To the contrary, it is simply contending that TVI had no right under the agreement to avoid its own performance in light of its breach; plaintiff contends that, having caused delay, in violation of a contractual duty, TVI could not then avoid its own performance under the contract by reason of that very delay. Plaintiff submits that the question whether TVI was in material breach, under the

10

unique facts and legal context of this case, presents a question of fact that must be determined by a trier of fact.

For all these reasons, the question whether TVI materially breached its agreement with Crossroads presents questions of fact. On that basis, defendant's motion should be denied.

5.   Crossroads Did Not Waive Its Right To Claim Material Breach

TVI argues in the alternative that Crossroads waived any right it had to claim that TVI was in material breach of the agreement. In support of this argument, TVI relies on Crossroads' continued participation in the permitting process, and its failure to communicate to TVI a belief that a material breach had occurred. Def. Mem. at 17-20.

This argument is unavailing.  First, as a matter of general contract law, a party presented with a material breach may, but is not required to, suspend performance under the contract.  "If the breach is material, the aggrieved party may cancel the contract. He may sue also for a total breach if he can show that he would have been ready, willing and able to perform but for the breach. However he also has the option of continuing with the contract and suing for a partial breach."  Calamari & Perillo, Id. § 11-18, at 458.

Second, the parties' agreement by its explicit terms specified that a party could not by its conduct waive a right that it would otherwise have, under law or otherwise.  Paragraph 9(f)

specifically provided as follows:

> (f) <u>Cumulative Rights; Waiver</u>.  Each and every right granted to a party hereunder, or in any other document contemplated hereby, or delivered hereunder or executed concurrently herewith, or by law or equity, shall be cumulative and may be exercised <u>at any time</u>, or from time to time.  <u>No failure on the part of any party to exercise, and no delay in exercising, any right shall operate as a waiver thereof</u>, nor shall any single or partial exercise by any party of any right preclude any other or future exercises of such right or the exercise of any other right.

Agreement, ¶ 9(f)(emphasis added).

TVI's waiver argument flies directly in the face of, and is precluded by, this contractual provision.  TVI points to Crossroads' failure to assert a breach of the 45-day requirement, and its continued participation in the approval process, as evidence of a waiver.  Def. Mem. at 19.  When asked about the failure to claim breach after the passage of the 45-day deadline with no applications having been filed by TVI, Mr. DeCesare stated that he "ultimately decided [he] would allow the date to pass and seek in [his] mind, as [he] went along, to see whether or not there was any damage as a result of it." (DeCesare, p.74).  Under the law noted above, Mr. DeCesare was fully justified in this position -- awaiting TVI's continued performance to see if Crossroads was damaged, rather than abandoning the contract entirely.  Further, under the non-waiver clause in the contract, Crossroads cannot be deemed to have waived a right to assert TVI's material breach by virtue of any delay.  Had TVI never attempted to escape from the

12

agreement, Crossroads would never have had to raise the question of its material breach.

The presence of an explicit non-waiver clause distinguishes this case from the cases relied on by TVI, <u>Bradford Novelty Co. v. Technomatic, Inc.</u>, 142 Conn. 166, 112 A.2d 214 (1955) and <u>Van Dyck Printing v. Dinicola</u>, 43 Conn. Supp. 191 (1993). The facts of the <u>Bradford</u> case, however, illustrate how this case differs from the typical "material breach" case. TVI notes the conclusion of the court in <u>Bradford</u> that plaintiff's conduct "justified the defendant's belief that strict performance as to time would not be demanded." <u>Bradford</u>, 142 Conn. at 167. The issue here is not whether TVI may be held liable for its failure to meet the precise time deadlines in the contract. Instead, the key question is whether it may escape its obligations under the contract because of the failure of certain contingencies to occur by a specified date, when TVI's actions caused that failure.

6. There is a Material Issue of Fact As To Whether TVI's Conduct Violated CUTPA or The Implied Covenant Of Good Faith and Fair Dealing

TVI also seeks summary judgment as to Counts Three and Four of plaintiff's complaint, which allege violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and the implied covenant of good faith and fair dealing. These motions should be denied, because the facts as admitted by defendant and established at deposition would support a finding of liability of either theory.

13

Defendant relies on the proposition that a "simple breach of contract" is insufficient to establish a violation of CUTPA. Def. Mem. at 21. It is clear, however, that in an appropriate case the same facts may give rise both to a claim for contract breach and for a CUTPA violation. Indeed, in a number of cases, Connecticut courts have held that CUTPA may be violated by breach or repudiation of a contract in order to negotiate a better deal. See, e.g., Lester v. Resort Campland International, Inc., 27 Conn. App. 57, 605 A.2d 550 (1992) (defendant held to have violated CUTPA where it repudiated contract for membership allowing use of campsites after plaintiff refused to agree to adjustments sought by defendant); Bridgeport Restoration Co., Inc. v. A. Petrucci Construction Co., 211 Conn. 239 557 A.2d 1263 (1989) (CUTPA violated where contractor promised subcontractor that if he were awarded contract, subcontractor would get subcontract on which he bid, but contractor awarded subcontract to different bidder when the subcontractor refused to agree to further adjustments); DiTomaso v. Shorehaven Golf Club, Inc., 2003 WL 21299609 (Conn. Super. Ct. May 23, 2003)(denying motion to strike CUTPA claim based on alleged change in membership and initiation rules after plaintiff joined club; following Lester); First Commerce of America v. Mr. Travel Agent, Inc., 1995 WL 155424 (Conn. Super. Ct. Mar. 28, 1995) (claim of attempt to coerce refinancing at higher interest rate and threat to impose higher interest rate in default although not provided for in agreement presented question of material fact as to whether conduct amounted to CUTPA violation). See also Saratoga

Vichey Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) (violation of CUTPA by bad faith conduct amounted to unfair competition).

Decisions from other jurisdictions also support an unfair trade practices claim where a contract is terminated or repudiated or a discretionary right is exercised for purposes of renegotiating the transaction. The most significant decision is that of the Supreme Judicial Court of Massachusetts in Anthony's Pier Four, Inc. v. HBC Associates, 583 N.E.2d 806 (Mass. 1991), where the court held that it was both a breach of the duty of good faith and fair dealing and of Ch. 93A, the Massachusetts analogue of CUTPA, where a landlord refused to give a developer assent under a satisfaction clause in order to coerce him to pay more than originally agreed.

The decision in Boulevard Associates v. Sovereign Hotels, 72 F.3d 1029, 1038 (2d Cir. 1995), on which defendant relies, is unpersuasive, and rests on a flawed reading of applicable authority. The Second Circuit in Boulevard Associates acknowledged the Appellate Court's decision in Lester, but distinguished the Lester holding as supposedly depending on the fact that misrepresentations were made at the outset of the contract. Boulevard Associates, 72 F.3d at 1039 n.5.[2] The Lester decision, however, does not depend on proof of misrepresentation. Indeed, the court emphasized that "[a] CUTPA

---

[2] The Second Circuit cited an unpublished Connecticut Superior Court case for this proposition -- a questionable basis on which to limit a holding of a higher tribunal, the Connecticut Appellate Court. 72 F.3d at 1039 n.5.

15

violation need not involve fraud on the part of the violator." Lester, 27 Conn. App. at 71.

In Lester, the plaintiffs had purchased memberships in a campground; the memberships allowed a maximum 14-day stay at the same campsite, but allowed members to move to another campsite within the facility after the 14-day period had passed. Later, the defendants changed their rules to require plaintiffs to leave the grounds after 14 days; in conjunction with this change they offered the opportunity to purchase a new "gold card" membership that would permit the owner to stay beyond the 14-day limit. 27 Conn. App. at 61-64. The court upheld a jury finding of CUTPA liability, noting that the defendants "unilaterally altered that portion of their contract with the plaintiffs that allowed unlimited access to the campground, providing there was space available, unless they paid additional sums . . . by purchasing a gold card membership." Lester, 27 Conn. App. at 71-72. The court concluded the jury could reasonably have found "that the reason for the implementation of the fourteen day rule was to force members such as the plaintiffs to pay additional sums of money to receive what they had already purchased." Lester, 27 Conn. App. at 72. These actions, the court emphasized, were "a prime example of the type of conduct which CUTPA seeks to remedy." Id. The core facts giving rise to liability were the refusal to honor the original contract terms, coupled with the attempt to force plaintiffs to pay more money for what they thought they were already contractually entitled to receive.

16

Here, there is no dispute that TVI attempted to terminate its agreement with Crossroads. Crossroads alleges that this termination was wrongful and without legal basis; at minimum, as discussed above, there is a question of fact as to whether TVI had a right to terminate. Thereafter, TVI offered to proceed with the tower agreement, but only if Crossroads agreed to terms substantially more favorable to TVI than those set forth in the original agreement. See Maccini at 127-31. Mr. Maccini conceded that by sending the termination letter in August 2002, in his mind he had withdrawn from a deal he perceived to be bad for TVI, but was still willing to go forward if he could renegotiate a better deal. Id. at 137-38. Mr. Maccini formulated two separate proposals for a revised deal, both of which were significantly more favorable to TVI than the parties' initial agreement. See Exhibits 12 and 13 to Maccini deposition (attached as Exhibit B). He also met with Mr. DeCesare to discuss alternate terms under which TVI was willing to proceed with the agreement. (Maccini, at 118-20).

TVI characterizes this set of facts as a proper attempt to renegotiate more favorable terms following the lawful termination of a contract. Crossroads contends that the underlying termination was wrongful, and the subsequent attempt to procure more favorable terms part of an improper attempt to gain unfair advantage by virtue of the contract breach. This question necessarily turns on how the breach question is resolved -- which, as we have contended, is a question of fact. However, viewing the facts in the light

most favorable to Crossroads, they could support a finding of CUTPA liability under the theory approved in the Lester decision. Accordingly, the Court should deny summary judgment on the CUTPA claim as well.

The highly subjective and fact-based nature of the test for determining whether conduct is "unfair" under CUTPA also militates against a grant of summary judgment. As defendant notes, the Connecticut courts have adopted the so-called "cigarette rule" as a benchmark for evaluating whether a party's conduct is unfair under CUTPA. This rule requires, among other things, a consideration of whether the conduct in question "offends public policy" or otherwise "is within at least the penumbra of some common law, statutory or other notion of unfairness." It also mandates consideration of whether conduct is "immoral, unethical, oppressive or unscrupulous." Boulevard Associates, 72 F.3d at 1038. These nebulous questions may not be resolved as a matter of law on this summary judgment motion.

The relevant standard for breach of the covenant of good faith and fair dealing is similar to CUTPA, and likewise inappropriate for summary judgment.

Every contract imposes upon each party a duty of good faith and fair dealing. Magnan v. Anaconda Industries, Inc, 193 Conn. 558, 566-67, 429 A.2d 492 (1984); Warner v. Konover, 210 Conn. 150, 154-56, 533 A.2d 1138 (1989). The touchstone for violation of the

covenant of good faith and fair dealing is some showing of "bad faith."  <u>Warner</u>, 210 Conn. at 155-56.

Here, viewing the facts in the light most favorable to Crossroads, TVI (1) attempted to exercise a right to terminate its contract with Crossroads because it no longer found the deal to be economically advantageous to TVI, and (2) attempted to use the specter of termination, and its wrongful breach of its agreement, as a negotiating tool in order to persuade Crossroads to agree to more favorable terms.  A trier of fact could fairly find that such conduct constitutes "bad faith".  As with the CUTPA issue, the determinative question turns largely on how one characterizes the underlying claim of contract breach.  Accordingly, summary judgment on the good faith/fair dealing count should also be denied.

<u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment should be denied in its entirety.

```
                              THE PLAINTIFF
                              CROSSROADS COMMUNICATIONS OF OLD
                              SAYBROOK, LLC


                           By_____
                              David T. Grudberg, ct01186
                              JACOBS, GRUDBERG, BELT & DOW, P.C.
                              350 Orange St.
                              P.O. Box 606
                              New Haven, CT  06503
                              Ph.:(203) 772-3100
                              Fax:(203) 772-1691
                              Email: dgrudberg@jacobslaw.com
```

CERTIFICATION

    I hereby certify that the foregoing was served by fax and overnight delivery on October 28, 2004 to:

Steven R. Humphrey, Esq.  
Elizabeth R. Leong, Esq.  
Marion B. Manzo, Esq.  
Robinson & Cole, LLP  
280 Trumbull St.  
Hartford, CT  06103-3597

                                                           _____  
                                                            David T. Grudberg