

**EXHIBIT A**

DESCRIPTION OF PREMISES

That certain piece or parcel of land with the buildings thereon, located on the northerly side of Springbrook Road in the Town of Old Saybrook, County of Middlesex and State of Connecticut; being more particularly shown as parcels A and B on a plan or map entitled "Survey Map of a Portion of the Property of Long Island Sound Radio Corp., Old Saybrook, Connecticut, Scale 1" - 20', Dated January 2, 1970, Revision of 7-2-69 Map, Angus L. McDonald, Land Survey Consultants, P.C., Old Saybrook, Conn.", said plan or map to be filed in the Old Saybrook Land Records; said premises being more particularly bounded and described as follows:

BEGINNING at a point at a post corner on a steel fence on the northerly side of said Springbrook Road, which point marks the southeasterly corner of the within conveyed premises and the southwesterly corner of land now or formerly of Daniel Adanti;

THENCE RUNNING South 58° 59' 10" West by and along the northerly line of Springbrook Road one hundred twenty-one and eighty-five hundredths (121.85) feet to an iron pipe and other land now or formerly of Long Island Sound Radio Corporation;

THENCE RUNNING North 31° 00' West one hundred seventy-nine and forty-five hundredths (179.45) feet to another iron pipe;

THENCE RUNNING North 59° 11' 10" East still by and along land now or formerly of Long Island Sound Radio Corporation one hundred three and seventy-three hundredths (103.73) feet to another iron pipe and land of said Adanti;

THENCE RUNNING South 39° 40' 23" East by and along said Adanti land thirteen and fifty-three hundredths (13.53) feet to a wood fencepost; and

THENCE continuing South 37° 30' 05" East forty-seven and seventy-three hundredths (47.73) feet to an iron pipe;

THENCE continuing South 35° 54' 09" East thirty-seven and seven hundredths (37.07) feet to another iron pipe; and

THENCE continuing South 36° 16' 15" East still by and along said Adanti land eighty-one and sixty-eight hundredths (81.68) feet back to the place or point of BEGINNING.

SAID premises are conveyed together with the right, privilege and authority perpetually to maintain a ground system and guy wires for radio transmission, including the right to lay, maintain, operate, construct, alter, repair and replace the same in or through land adjacent to the land of the Grantee and immediately north and west thereof bounded with a radius of 175 feet from the base of the transmission tower as shown on parcel "B" on the aforesaid plan or map and including the area shown as within said radius on Parcel "C" of said plan or map.

ALSO the right to enter on the land within said easement at any time for the purposes of constructing, servicing, repairing or replacing said ground system or any material therein.

Said premises are subject to:

1) Obligations in connection with maintenance of grounds system as more fully set forth in instrument recorded in Volume 253 at Page 4 of the Old Saybrook Land Records.

26

WO 0309

2) Building restrictions as more fully set forth in an instrument recorded in Volume 253 at Page 4 of the Old Saybrook Land Records.

3) Right of first refusal in favor of Long Island Sound Radio Corporation as more fully set forth in an instrument recorded in Volume 253 at Page 4 of the Old Saybrook Land Records.

4) Any and all provisions of any public or private law, ordinance or governmental regulation, including building and zoning ordinances and wetland regulations affecting said premises, and to real property taxes due the Town of Old Saybrook on the Grand List of October 1, 1995, second half.

27

WO 0310

**EXHIBIT B**

**FORM OF NOTE**

**TERM NOTE SECURED BY MORTGAGE DEED, SECURITY
AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS**

$_____                                                    _____, 200_

        FOR VALUE RECEIVED, the undersigned, CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC, a Connecticut limited liability company with a business address at _____ (the "Maker"), does hereby promise to pay to the order of TOWER VENTURES, INC. , a Rhode Island corporation with its principal place of business at 170 Westminster Street, Suite 170, Providence, Rhode Island 02903 (which corporation, together with its successors, endorsees and assigns, is hereinafter referred to as the "Payee"), the principal sum of _____ Dollars ($_____), together with interests on the outstanding unpaid balance hereof at the rate of six and one-quarter percent (6 ¼%) per annum, together with all costs of collection including reasonable attorney's fees incurred in any action to collect this Note, and all costs incurred in connection with the foreclosure or enforcement of the lien of any mortgage or security securing this Note, regardless of whether suit is brought to enforce such collection or to foreclose or enforce the lien of such security.

        This Note shall be payable by Maker in_____ (____) consecutive monthly installments of principal and interest each in the amount of _____ Dollars ($_____), the first such installment to be paid on _____, 200_, and each subsequent installment shall be paid on the first day of each month thereafter.

        If not sooner paid, the entire outstanding principal balance of this Note and all accrued interest hereon shall be due and payable without the necessity for demand or notice on November 1, 2016. Interest on the outstanding principal balance of this Note shall be payable upon the actual daily balance of the unpaid principal hereof.

        All principal and interest hereunder are payable in lawful money of the United States of America at the office of the Payee at the address shown above ~~or at such other place as the Payee may designate~~. All payments made by the maker hereunder shall be applied first to all costs, fees and expenses due from the Maker to the Payee, if any, then to interest, then to principal,  provided, however, that after the occurrence of an Event of Default (as such term is hereinafter defined), payments will be applied to the obligations of the Maker to the Payee as the Payee determines in its sole discretion.

        This Note is secured by a Mortgage Deed, Security Agreement and Assignment of Leases and Rents of even date herewith from the Maker to the Payee (the "Mortgage"), to which reference is hereby made for a complete statement of the rights and obligations of the parties thereunder.  Upon the occurrence of: (i) a default in any payment due under this Note which remains uncured twenty (20) days after the due date of such payment, or (ii) an Event of Default under the Mortgage (each of which such defaults shall be referred to as a "Default" or an "Event of Default" hereunder), the entire principal sum hereof and all accrued and unpaid interest thereon shall, at the option of the holder of this Note, at once become due and payable without the necessity of any notice, demand or presentment, and Payee shall have the right to take such other action as may be provided for in the Mortgage and all other instruments evidencing and/or securing the indebtedness hereunder.  Failure to exercise this option at any time shall not constitute a waiver of the right to exercise the same at a later time or in the event of any subsequent

28

WO 0311

Default. Upon the occurrence of a Default, or upon the maturity hereof, the outstanding principal balance of the indebtedness evidenced by this Note shall bear interest from the date of the occurrence of such Default or such maturity until collection, including any period of time after judgment is rendered with regard thereto, at the rate of twelve and one-half percent per annum. In addition, if the Payee shall not receive the full amount of any payment due under this Note within ten (10) days after the due date of such payment, then the Maker shall pay to the Payee a late charge equal to five percent (5%) of such payment.

THE MAKER ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY REPRESENTS TO AND COVENANTS WITH THE PAYEE THAT THE PROCEEDS OF THE LOAN REPRESENTED BY THIS NOTE SHALL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. THE MAKER HEREBY WAIVES ANY AND ALL RIGHTS THE MAKER MAY HAVE UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS THE SAME MAY BE AMENDED, OR UNDER ANY SIMILAR LAW THAT HEREAFTER MAY BE ENACTED, AND/OR AS IS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE PAYEE MAY DESIRE TO USE, INCLUDING, WITHOUT LIMITATION, ANY RIGHTS TO NOTICE AND PRIOR JUDICIAL HEARING, GARNISHMENT, ATTACHMENT, AND/OR FOREIGN ATTACHMENT AND REPLEVIN. FURTHER, THE MAKER HEREBY EXPRESSLY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL VALUATION, APPRAISEMENT, HOMESTEAD, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS, NOW IN FORCE OR WHICH MAY HEREAFTER BECOME LAWS. THE MAKER ACKNOWLEDGES THAT IT MAKES THESE WAIVERS KNOWINGLY AND VOLUNTARILY.

The Maker of this Note, for itself and its legal representatives, successors and assigns, hereby expressly waives presentment, demand, protest, notice of protest, presentment for the purpose of accelerating maturity, diligence in collection, and the benefit of any exemption or insolvency laws, and consent that the Payee may, without affecting the Maker's liability hereunder, release or surrender, exchange or substitute any personal property or other collateral security now held or which may hereafter be held as security for the payment of this Note, and may extend the time for payment or otherwise modify the terms of payment of any part or the whole of the debt evidenced hereby.

All agreements between the Maker and the Payee are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness or otherwise, shall the amount paid or agreed to be paid to the Payee for the use, forbearance or detention of the indebtedness evidenced hereby exceed the maximum permissible amount or rate under applicable law. If, under any circumstances whatsoever, fulfillment of any provision hereof or of the Loan Documents (as such term is defined in the Mortgage), at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if under any circumstance the Payee should ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest. As used herein, the term "applicable law" shall mean the law in effect as of the date hereof, provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Note shall be governed by such new law as of its effective date. This provision shall control every other provision of all agreements between the Maker and the Payee.

No delay in the enforcement hereof, nor any substitution or release of any collateral or any party, with or without notice, shall release the obligations of the Maker to the Payee. No delay by the holder hereof in exercising any of the rights hereunder shall operate as a waiver of any rights the holder may have, and any waiver granted for one occasion shall not operate as a waiver in the event of any other or subsequent Default.

The Maker may prepay all or any part of the principal balance of this Note at any time without penalty or premium, provided that no partial payment shall in any way release, discharge or offset the

WO 0312

obligations of the Maker to make the remaining principal and interest payments hereunder or to otherwise perform in accordance with the terms of this Note, the Mortgage and the other Loan Documents.

THE MAKER AND THE PAYEE EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL: (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE MAKER CERTIFIES THAT NEITHER THE PAYEE NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE PAYEE WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR PAYEE TO ACCEPT THIS NOTE AND TO LOAN THE SUM FIRST SET FORTH ABOVE TO THE MAKER.

The Maker and the Payee agree to submit to jurisdiction in the state of Connecticut in any action or proceeding arising out of this Note or any of the other Loan Documents, and in furtherance of such agreement, the Maker and the Payee hereby agree and consent that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Maker and the Payee by registered or certified mail to their last known addresses, whether such addresses are within or without the jurisdiction of any such court.

This Note shall inure to the benefit of Payee and its successor and assigns, and shall be binding upon the Maker and its successors and assigns, provided that notwithstanding anything to the contrary set forth herein, the Maker may not assign or delegate any of its rights and/or obligations hereunder or under any of the other Loan Documents without the prior written consent of the Payee, which consent may be withheld in the Payee's sole and absolute discretion.

This Note and all transactions hereunder and/or evidenced herein shall be governed by, construed, and enforced in accordance with the laws of the State of Connecticut (but not the conflict of laws rules thereof).

If this Note is not paid when due and is placed by the holder hereof in the hands of any attorney for collection, through legal proceedings or otherwise, the Maker will pay, in addition to all other sums due hereunder, the Payee's costs and expenses of collection, including reasonable attorneys' fees.

IN WITNESS WHEREOF, the Maker has caused this Note to be executed as an instrument under seal by their duly authorized officer and manager as of the date first above written.

**CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC**

By:_____
   Name:
   Title:

30

**EXHIBIT C**

<u>FORM OF NOTE</u>

**[See attached Note]**

31

**WO 0314**

**TERM NOTE SECURED BY MORTGAGE DEED, SECURITY
AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS**

$_____                                                        _____, 200\_
                                                                        _____

FOR VALUE RECEIVED, the undersigned, CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC, a Connecticut limited liability company  with a business address at _____ (the "Maker"), does hereby promise to pay to the order of TOWER VENTURES, INC. , a Rhode Island corporation with its principal place of business at 170 Westminster Street, Suite 170, Providence, Rhode Island 02903 (which corporation, together with its successors, endorsees and assigns, is hereinafter referred to as the "Payee"), the principal sum of _____ Dollars ($_____), together with interests on the outstanding unpaid balance hereof at the rate of six and one-quarter percent (6 ¼%) per annum, together with all costs of collection including reasonable attorney's fees incurred in any action to collect this Note, and all costs incurred in connection with the foreclosure or enforcement of the lien of any mortgage or security securing this Note, regardless of whether suit is brought to enforce such collection or to foreclose or enforce the lien of such security.

This Note shall be payable by Maker in _____ (\_\_\_\_) consecutive monthly installments of principal and interest each in the amount of _____ Dollars ($_____), the first such installment to be paid on _____, 200\_, and each subsequent installment shall be paid on the first day of each month thereafter.

If not sooner paid, the entire outstanding principal balance of this Note and all accrued interest hereon shall be due and payable without the necessity for demand or notice on November 1, 2016. Interest on the outstanding principal balance of this Note shall be payable upon the actual daily balance of the unpaid principal hereof.

All principal and interest hereunder are payable in lawful money of the United States of America at the office of the Payee at the address shown above in immediately available funds. All payments made by the maker hereunder shall be applied first to all costs, fees and expenses due from the Maker to the Payee, if any, then to interest, then to principal, provided, however, that after the occurrence of an Event of Default (as such term is hereinafter defined), payments will be applied to the obligations of the Maker to the Payee as the Payee determines in its sole discretion.

This Note is secured by a Mortgage Deed, Security Agreement and Assignment of Leases and Rents of even date herewith from the Maker to the Payee (the "Mortgage"), to which reference is hereby made for a complete statement of the rights and obligations of the parties thereunder.  Upon the occurrence of: (i) a default in any payment due under this Note which remains uncured twenty (20) days after the due date of such payment, or (ii) an Event of Default under the Mortgage (each of which such defaults shall be referred to as a "Default" or an "Event of Default" hereunder), the entire principal sum hereof and all accrued and unpaid interest thereon shall, at the option of the holder of this Note, at once become due and payable without the necessity of any notice, demand or presentment, and Payee shall have the right to take such other action as may be provided for in the Mortgage and all other instruments evidencing and/or securing the indebtedness hereunder.  Failure to exercise this option at any time shall not constitute a waiver of the right to exercise the same at a later time or in the event of any subsequent Default.  Upon the occurrence of a Default, or upon the maturity hereof, the outstanding principal balance of the indebtedness evidenced by this Note shall bear interest from the date of the occurrence of such Default or such maturity until collection, minus any period of time after judgment is rendered with regard thereto, at the rate of twelve and one-half percent per annum.  In addition, if the Payee shall not receive the full amount of any payment due under this Note within ten (10) days after the due date of

32

WO 0315

such payment, then the Maker shall pay to the Payee a late change equal to five percent (5%) of such payment.

THE MAKER ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY REPRESENTS TO AND COVENANTS WITH THE PAYEE THAT THE PROCEEDS OF THE LOAN REPRESENTED BY THIS NOTE SHALL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. THE MAKER HEREBY WAIVES ANY AND ALL RIGHTS THE MAKER MAY HAVE UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS THE SAME MAY BE AMENDED, OR UNDER ANY SIMILAR LAW THAT HEREAFTER MAY BE ENACTED, AND/OR AS IS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE PAYEE MAY DESIRE TO USE, INCLUDING, WITHOUT LIMITATION, ANY RIGHTS TO NOTICE AND PRIOR JUDICIAL HEARING, GARNISHMENT, ATTACHMENT, AND/OR FOREIGN ATTACHMENT AND REPLEVIN. FURTHER, THE MAKER HEREBY EXPRESSLY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL VALUATION, APPRAISEMENT, HOMESTEAD, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS, NOW IN FORCE OR WHICH MAY HEREAFTER BECOME LAWS. THE MAKER ACKNOWLEDGES THAT IT MAKES THESE WAIVERS KNOWINGLY AND VOLUNTARILY.

The Maker of this Note, for itself and its legal representatives, successors and assigns, hereby expressly waives presentment, demand, protest, notice of protest, presentment for the purpose of accelerating maturity, diligence in collection, and the benefit of any exemption or insolvency laws, and consent that the Payee may, without affecting the Maker's liability hereunder, release or surrender, exchange or substitute any personal property or other collateral security now held or which may hereafter be held as security for the payment of this Note, and may extend the time for payment or otherwise modify the terms of payment of any part or the whole of the debt evidenced hereby.

All agreements between the Maker and the Payee are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness or otherwise, shall the amount paid or agreed to be paid to the Payee for the use, forbearance or detention of the indebtedness evidenced hereby exceed the maximum permissible amount or rate under applicable law. If, under any circumstances whatsoever, fulfillment of any provision hereof or of the Loan Documents (as such term is defined in the Mortgage), at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity, and if under any circumstance the Payee should ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest. As used herein, the term "applicable law" shall mean the law in effect as of the date hereof, provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Note shall be governed by such new law as of its effective date. This provision shall control every other provision of all agreements between the Maker and the Payee.

No delay in the enforcement hereof, nor any substitution or release of any collateral or any party, with or without notice, shall release the obligations of the Maker to the Payee. No delay by the holder hereof in exercising any of the rights hereunder shall operate as a waiver of any rights the holder may have, and any waiver granted for one occasion shall not operate as a waiver in the event of any other or subsequent Default.

The Maker may prepay all or any part of the principal balance of this Note at any time without penalty or premium, provided that no partial payment shall in any way release, discharge or offset the obligations of the Maker to make the remaining principal and interest payments hereunder or to otherwise perform in accordance with the terms of this Note, the Mortgage and the other Loan Documents.

33

WO 0316

THE MAKER AND THE PAYEE EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL: (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE MAKER CERTIFIES THAT NEITHER THE PAYEE NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE PAYEE WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR PAYEE TO ACCEPT THIS NOTE AND TO LOAN THE SUM FIRST SET FORTH ABOVE TO THE MAKER.

The Maker and the Payee agree to submit to jurisdiction in the state of Connecticut in any action or proceeding arising out of this Note or any of the other Loan Documents, and in furtherance of such agreement, the Maker and the Payee hereby agree and consent that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Maker and the Payee by registered or certified mail to their last known addresses, whether such addresses are within or without the jurisdiction of any such court.

This Note shall inure to the benefit of Payee and its successor and assigns, and shall be binding upon the Maker and its successors and assigns, provided that notwithstanding anything to the contrary set forth herein, the Maker may not assign or delegate any of its rights and/or obligations hereunder or under any of the other Loan Documents without the prior written consent of the Payee, which consent may be withheld in the Payee's sole and absolute discretion.

This Note and all transactions hereunder and/or evidenced herein shall be governed by, construed, and enforced in accordance with the laws of the State of Connecticut (but not the conflict of laws rules thereof).

If this Note is not paid when due and is placed by the holder hereof in the hands of any attorney for collection, through legal proceedings or otherwise, the Maker will pay, in addition to all other sums due hereunder, the Payee's costs and expenses of collection, including reasonable attorneys' fees.

IN WITNESS WHEREOF, the Maker has caused this Note to be executed as an instrument under seal by their duly authorized officer and manager as of the date first above written.

**CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC**

By:_____
   Name:
   Title:

34

WO 0317

**EXHIBIT D**

<u>FORM OF LEASE</u>

**[See Attached Lease]**

35

WO 0318

SITE ID#: _____

## COMMUNICATIONS SITE LEASE AGREEMENT

This Lease (hereafter referred to as "Lease" or "Agreement") made and entered into this ___ day of _____, 200_ by and between TOWER VENTURES, INC., a Rhode Island Corporation (hereafter referred to as "Lessee") and CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC, a Connecticut limited liability company (hereafter referred to as "Lessor").

### WITNESSETH THAT

**1. Leased Premises:** Lessor, in consideration of the rents to be paid by Lessee hereunder, does hereby lease, devise and let unto the said Lessee approximately six thousand (6,000) square feet of land (the "Site") more particularly described in Exhibit A, attached hereto, together with a nonexclusive easement for access 24 hours a day, 7 days a week thereto and for electric and telephone service and facilities, as more particularly described in Section 5 hereof (collectively, the "Leased Premises"). The Leased Premises will be used by Lessee solely for the purpose of installing, removing, replacing, maintaining, and operating, at its expense, a communications service system facility, or other electronic signal transmission devices or technology, including, without limitation, a communications tower, related antenna equipment, improvements and fixtures, as more particularly described in Section 4 hereof. Lessor represents and warrants that the proposed use of the Site by Lessee will not violate any exclusive or other agreement, covenant, restriction, law, rule, regulation, ordinance or understanding that Lessor may have given or to which Lessor is a party or by which Lessor is bound, or of which Lessor has actual or constructive knowledge.

**2. Term.** The term of this Agreement shall commence on the date Lessee signs this agreement. The initial term of this agreement (the "Initial Term") shall be ten (10) years plus the number of days from the date Lessee signs this Lease to the Rent Start Date. This agreement will be automatically renewed for four (4) additional terms of five (5) years each (collectively, the "Renewal Terms"; individually, a "Renewal Term"), commencing on the day after the tenth anniversary of the Rent Start Date, unless Lessee provides to Lessor notice of Lessee's election not to renew this Lease not less than one hundred eighty (180) days prior to the expiration of the Initial Term or any Renewal Term (The Initial Term and all Renewal Terms shall be collectively referred to herein as the "Term").

**3. Rent.** Rent will commence on the Rent Start Date. Rent will be paid monthly in advance beginning on the Rent Start Date and on the same day of each month thereafter (or the first business day thereafter) during the Term of the Lease. The Rent Start Date shall be the sooner of: (i) sixty (60) days from the date Lessee obtains all approvals necessary for its Communications Facilities (as such term is hereinafter defined), such approvals to be non-appealable; or (ii) the first day of the month following the month in which Lessee commences construction on the Site. The monthly rent will be One Thousand Five Hundred Dollars ($1,500), partial months to be prorated. Rent shall be increased by four percent (4%) annually on the anniversary of the Rent Start Date. Within five (5) days of the Rent Start Date, Lessee shall pay to Lessor a one-time fee of One Hundred Fifty Thousand Dollars ($150,000), payable by bank or certified check or wire transfer. Lessor shall receive as additional rent a percentage of rental fees collected by Lessee from tenants that lease space at the Site from Lessee as outlined in Exhibit C hereto. Lessee recognizes that Lessor is currently receiving rental payments pursuant to a lease agreement with Verizon Paging (the "Existing Lease") in the approximate amount of $480 per month. The Existing Lease shall be assigned to Lessee and Lessee shall forward all payments received under the Existing Lease to Lessor not later than five (5) business days after receipt thereof.

36

**4. Use of Demised Premises; Compliance with Laws and Regulations.**

(a) From and after the date of this Lease first set forth above, Lessee shall use the Leased Premises for the sole purpose of constructing, maintaining, replacing, modifying and operating one or more Communications Facilities (as hereinafter defined) and any related improvements. Lessee shall have the right to use such Communications Facilities for its business purposes, which shall include, but not be limited to, the subleasing or licensing to third parties (without Lessor's consent) of space upon and within the Communications Facilities and the Leased Premises. Such licensees or sublessees of Lessee shall have full access to the Leased Premises for their business purposes. For the purposes of this Lease, "Communications Facilities" shall be defined as communications towers, poles, guy wires and anchors, equipment shelters, buildings, any associated support buildings and any related improvements, communications service system facilities, and other electronic signal transmission devices or technology, including, related antenna equipment and fixtures.

(b) Lessee shall fence the Leased Premises and each of any guy anchor locations. Lessee may enter upon the Leased Premises and adjacent lands of Lessor from and after the date and execution of this Lease by Lessor for the purpose of making surveys and conducting soil, engineering and other tests and in order to install and maintain guy anchors and wires, and may cut or trim the trees on the Leased Premises or any adjacent lands of Lessor in connection therewith with the consent of Lessor, which consent shall not be unreasonably withheld. Lessee shall have the right to clear and thereafter to keep clear the Leased Premises, and the rights of way, guy anchor locations and any utility easement areas located within and/or relating to the Leased Premises of trees, bushes, rocks and crops. If the construction or maintenance of the Communications Facilities results in damage to any adjacent lands of Lessor (other than as set forth herein) Lessee shall pay Lessor for such damage.

(c) Lessee will at all times during the Term observe and conform to, in all material respects, all laws, ordinances, orders, rules and regulations now or hereafter made by any governmental authority for the time being applicable to the Leased Premises or any improvement thereon or use thereof.

**5. Access.** Lessor hereby grants to Lessee, and to Lessee's licensees, subtenants, and assigns, the non-exclusive right seven (7) days a week, twenty-four (24) hours a day, for ingress and egress on foot or by motor vehicle (including trucks), and for the installation and maintenance of communications equipment, utility wires, poles, cables, conduits, and pipes over, under or along a reasonable right-of-way ("Right of Way") that will accommodate Lessee's intended uses for the Leased Premises extending from the nearest public right-of-way, over and across any property of Lessor to reach the Leased Premises. The Right of Way is a non-exclusive right of way for Lessee, its agents, employees, sublessees, licensees and business visitors. Lessee shall have the right to construct, maintain and repair a roadway over the aforementioned easements, including such work as may be necessary for slope and drainage, and to install such poles, wires, pipes, cables, conduits and related appurtenances as shall be necessary for the proper conduct of Lessee's business and for the utilization of electricity, water, telephone and gas services. If Lessor or other tenants of Lessor damage or disturb the Right of Way that Lessee constructs and maintains, then Lessor or Lessor's other tenants shall share in the reasonable and proportionate costs of the maintenance and reconstruction of said Right of Way. It is also understood and agreed that any guy wires and anchors necessary for Lessee's tower shall be located as shown on a site plan or survey annexed hereto as **Exhibit A**, but that Lessee shall have the right to utilize the area for the existing guy wires and anchors which may be located on Lessor's adjacent property and outside the Leased Premises.

**6. Title and Quiet Possession:**

(a) Lessor covenants that Lessee, upon paying the rent and performing the covenants hereof on the part of Lessee to be performed shall and may peaceably and quietly have, hold and enjoy the Leased Premises and all related appurtenances, rights, privileges and easements throughout the Term hereof without any lawful hindrance by Lessor and any person claiming by, through or under Lessor. If Lessor controls land adjacent to any of the Leased Premises, Lessor agrees for itself and all future holders of

37

WO 0320

such adjacent land that no use shall be made of the adjacent land during the Initial Term and any Renewal Term that would interfere or compete with Lessee's use of the Leased Premises as described herein.

(b) Lessor hereby represents and warrants to Lessee that: (a) Lessor is the fee owner of the Leased Premises and the lands immediately adjacent thereto which comprise the easements, rights of way and the guy anchor locations granted to Lessee hereunder; (b) such ownership is free and clear of all liens and encumbrances other than those which do not interfere with Lessee's use and operation of the Leased Premises; (c) Lessor has the lawful right and authority to execute this Lease and to grant the leasehold interests, easements and rights of way described herein; (d) Lessor has disclosed to Lessee in writing the names, addresses, phone numbers and contact personnel of all parties other than Lessor that hold any encumbrance upon or interest in the Leased Premises; (e) Lessor has obtained and delivered to Lessee the consents of all parties other than Lessor that hold any encumbrance upon or interest in the Leased Premises to the existence, execution and delivery of this Lease, the granting of a leasehold interest in the Leased Premises to Lessee in accordance with the terms hereof, and Lessee's and its licensees' and sublessees' utilization of the Leased Premises for the purposes described herein; (f) Lessor shall not have unsupervised access to the Leased Premises; and (g) Lessee has an exclusive lease of the Leased Premises and Lessor may not execute additional lease(s) of the Site for any purposes, including, but not limited to, telecommunications equipment placement and/or operation.

(c) Lessee may, after the execution of this Lease by Lessee, obtain an abstract or preliminary title report regarding the Leased Premises from a title insurance company of its choice. If the state of title as indicated by said abstract or preliminary title report shall show any liens or encumbrances which interfere with Lessee's use and operation of the Leased Premises, Lessee shall have the right to either (i) discharge such liens or encumbrances of record, if possible, or (ii) cancel this Lease upon written notice to Lessor. Lessor agrees to use its reasonable best efforts to cooperate with Lessee in curing such title defects.

**7. Assignment:** Lessee shall have the right, at any time, and from time to time, from and after the date of this Lease (or any renewal or extension hereof) to assign or mortgage this Lease, in whole or in part, to any entity or third party, without Lessor's consent, provided that any such mortgagee or assignee agrees to assume Lessee's obligations hereunder. Upon any such assignment, Lessee shall remain secondarily liable for Lessee's obligations under this Lease, provided that in the event that any such mortgagee or assignee breaches or defaults under this Lease, Lessor will use its commercially reasonable good faith efforts to seek redress of and remedies for and/or to prosecute claims with regard to such defaults or breaches from and against said mortgagee or assignee before proceeding against Lessee with regard thereto. Also, Lessee shall have the right to sublease or license the Communications Facilities to third party tenants and licensees without the consent of Lessor.

**8. Notices:** All notices must be in writing and are effective when received in the U.S. mail, certified and postage prepaid, or when sent via overnight delivery, to the address set forth below, or as otherwise provided by law.

**9. Improvements:**

(a) Lessee may, at its expense, make such improvements on the Site, as it deems necessary from time to time for the installation, construction, maintenance and operation and any related activities of a transmitter site for wireless voice and data communications. All such improvements shall comply with all applicable codes, laws, ordinances, and regulations, local, state, and federal. Lessor agrees to reasonably cooperate with Lessee with respect to obtaining any required governmental approvals for the Site and such improvements, at Lessee's sole cost and expense. Upon termination or expiration of the Lease, Lessee shall remove its equipment and improvements from the Site and shall be required to restore the Site to the condition existing on the commencement of this Lease, except for ordinary wear, tear and casualty.

38

(b)  The Communications Facilities shall be the property of and owned by Lessee.  Lessor covenants and agrees that neither the Communications Facilities nor any part of the improvements constructed, erected or placed by Lessee on the Leased Premises shall become or be considered as being affixed to or a part of the Leased Premises, any and all provisions and principles of law to the contrary notwithstanding, it being the specific intention of Lessor that the Communications Facilities and all improvements of every kind and nature constructed, erected or placed by Lessee on the Leased Premises shall be and remain the property of Lessee.  Lessor hereby agrees and acknowledges that Lessor shall have no lien or other interest or claim in or to the Communications Facilities and all improvements of every kind and nature constructed, erected or placed by Lessee on the Leased Premises, and that Lessor will confirm the same in writing upon request by Lessee.

**10.  Compliance with Laws:** Lessor represents and warrants that Lessor's property (including the Site), and all improvements located thereon (other than improvements constructed by Lessee), are in substantial compliance with all laws, rules, regulations and ordinances, including, but not limited to, building, life/safety, disability and other laws, codes and regulations of applicable governmental authorities.

**11.  Utilities.** Lessee or its licensees and subtenants who are leasing space at the Site from Lessee will pay for all utilities used by them at the Site. Lessor will cooperate with Lessee in Lessee's efforts to obtain utilities from any location provided by Lessor or the servicing utility.  Lessee reserves the right to bring in emergency power to the Site in case of power failure.

**12. Termination:** Lessee may terminate this agreement at any time by written notice to Lessor without further liability if Lessee does not obtain all permits or other approvals (collectively, the "Approvals") required from any governmental authority or any easements required from any third party to operate the communication facility, or if any of the Approvals are canceled, expire or are withdrawn or terminated, or if Lessor fails to have proper ownership of, or appropriately clear title to, the Site or authority to enter into this Lease.  Upon the exercise of such right by Lessee, this Lease shall become null and void and neither party shall have any further obligation to the other party hereto.  Lessee shall make proper application for all required Approvals as expeditiously as possible but in no event later than forty-five (45) days after the execution of this Agreement and shall thereafter use its best efforts diligently to obtain all such Approvals.

**13.  Default:**  If either party is in default under this Lease for a period of (a) 10 days following receipt of notice from the non-defaulting party with respect to a default which may be cured solely by the payment of money, or (b) 30 days following receipt of notice from the non-defaulting party with respect to a default which may not be cured solely by the payment of money, then, in either event, the non-defaulting party may pursue any and all remedies available to it against the defaulting party under applicable law or in equity, including, but not limited to, the right to terminate this Lease and to collect rents due for the unexpired term hereof plus costs and expenses of collection and repossession, including reasonable attorney's fees. If a non-monetary default may not reasonably be cured within a 30 day period, the Lease may not be terminated if the defaulting party commences action to cure the default within such 30 day period and proceeds with due diligence to fully cure the default as soon as reasonably practicable.

**14.  Indemnity:**  Lessor and Lessee shall each indemnify the other against and hold the other harmless from any and all costs (including reasonable attorneys fees) and claims of liability or loss, injury, claim or damages which arise out of the use and/or occupancy of the Site by the indemnifying party.  This indemnity does not apply to and shall not be available for any claims arising from the gross negligence or intentional misconduct of the indemnified party or any employee, agent, representative or affiliate of the indemnified party.

39

WO 0322

**15. Insurance:** Lessee, at its sole cost and expense, shall maintain, during the Term of this Lease, commercial general liability insurance with combined single limit coverage of $2,000,000 with a certificate of insurance to be furnished to Lessor upon request. Lessee shall cause this certificate of insurance to be reviewed, at least one time during the Initial Term and during each Renewal Term of this Lease, to ascertain the appropriateness of limitations of coverage which shall be not less than that maintained by others in the industry on similar properties. Such certificate shall provide that the certificate shall not be canceled or modified without at least thirty (30) days prior written notice to Lessor.

**16. Confidential Information/Nondisclosure:** Lessor and Lessee acknowledge and agree that (a) information submitted by Lessor and Lessee to the other party hereto concerning the equipment, methods of operation or business affairs of Lessor and Lessee (the "Shared Information") is proprietary and confidential and that the Shared Information is solely for Lessor's and Lessee's use in connection with this Lease.

**17. Hazardous Substances:** Lessor represents and warrants that it has no knowledge of: (a) any substance, chemical or waste (collectively, the "Substance") on the Site that is identified as hazardous, toxic or dangerous in any applicable federal, state or local law or regulation; or (b) any underground storage tank being located at the Leased Premises. Lessee shall not introduce or use any such Substance on the Site in violation of any applicable law.

**18. Force Majeure:** The parties' performance under this Lease shall be excused if such nonperformance is due to acts or occurrences which are not voluntary by such party or its affiliates and are beyond their reasonable control, including without limitation, governmental orders not based on the qualifications or acts of Lessee or its controlling affiliates, involuntary equipment failure, involuntary inability or delay in securing equipment, civil commotions, acts of nature, weather disturbances or adverse weather conditions, and other circumstances beyond the parties' reasonable control.

**19. Taxes:** Lessor shall be responsible for all real property taxes and assessments regarding the Leased Premises and shall cause the same to be paid when due. Notwithstanding the foregoing, Lessee shall be responsible for any increase in Lessor's real property taxes to the extent attributable to Lessee's use or occupancy of the Leased Premises. In addition, Lessee shall be responsible for taxes on personal property of Lessee at the Leased Premises and shall cause the same to be paid when due.

**20. Subordination and Non-Disturbance:** Lessee acknowledges that prior to the date of this Lease Lessor may have granted or permitted to exist a mortgage(s), deed(s) of trust or other liens or encumbrances which encumber some or all of the Leased Premises to certain institutions or persons (collectively, the "Lienholders"). On or prior to the date upon which this Lease is executed, Lessor shall obtain non-disturbance agreements from all applicable Lienholders (other than Lessee) whereby such Lienholders agree to honor the Lease, and that such Lease shall remain in full force and effect and shall not be terminated, and Lessee shall be permitted to exercise all of its rights and remedies thereunder, as long as Lessee is not in default under the Lease, even in the event of foreclosure under the encumbrances to which such Lienholders are a party. Lessee hereby agrees and acknowledges that this Lease is subordinate to any encumbrances of record against the Site as of the date of this Agreement.

**21. Short Form of Lease.** At the request of either party, the other party shall duly execute and acknowledge for recording purposes a short form or memorandum of this Lease (in the form of **Exhibit B** attached hereto), which shall recite the names of the parties, describe the Leased Premises, specify the Term, and any options to extend the Term or purchase the Leased Premises, and provide that this Lease is made upon the rents, terms, covenants and conditions contained herein. Alternatively, either party may cause an original executed copy of this Lease to be recorded in the land records for the Town in which the Leased Premises are located.

40

**22. Condemnation, Damage.** If there is a condemnation of the Leased Premises or the Site (or a portion thereof which is sufficient to render the Leased Premises unsuitable for Lessee's purposes), including, without limitation, a transfer of the Leased Premises or the Site by consensual deed in lieu of condemnation, then this Lease shall terminate upon transfer of title to the condemning authority, without further liability to either party hereunder. Lessee and Lessor shall be entitled to pursue their own separate condemnation awards with respect to any such taking. If the Leased Premises or the Site are damaged or destroyed to an extent sufficient to render the Leased Premises unsuitable for Lessee's purposes, and such damage or destruction was not caused by Lessee or any of Lessee's assignees or subtenants and/or their respective agents, contractors or employees, then Lessee shall have the right to terminate this Lease as of the date that such damage or destruction occurred, without prejudice to or otherwise affecting any rights or remedies that Lessee may have hereunder or at law or in equity, and the rent due hereunder shall be prorated to such date of termination, unless Lessor notifies Lessee in writing that Lessor will repair, at its sole cost, such damage or destruction and thereafter Lessor repairs such damage or destruction within forty-five (45) days after the date upon which such damage or destruction occurred. During the period in which Lessor effects such repairs, the rent due hereunder shall be abated.

**23. Miscellaneous:** (a) This Lease applies to and binds the heirs, successors, executors, administrators and assigns of the parties to this agreement. (b) This Lease is governed by and shall be construed in accordance with the laws of the State of Connecticut. (c) This Lease (including the Exhibits hereto) constitutes the entire agreement between the parties with regard to the subject matter hereof and supersedes all prior written and verbal agreements, representations, promises or understandings between the parties with respect to the subject matter hereof. (d) All amendments and modifications to and restatements of this Lease must be in writing and executed by both of the parties hereto. (e) Upon request, either party will provide an estoppel certificate to the other party hereto certifying the existence of the Lease and that it remains in full force and effect. (f) If any provision of this Lease is invalid or unenforceable with respect to any party, the remainder of this Lease and the application of such provision to persons other than those as to whom it is held invalid or unenforceable will not be affected thereby and each provision of this Lease will be valid and enforceable to the fullest extent permitted by law. (g) The prevailing party in any action or proceeding to enforce the terms of this Lease or in a mutually agreed upon arbitration proceeding to enforce the terms of this Lease is entitled to receive its reasonable attorneys' fees, damages (but not including consequential damages), and other reasonable enforcement costs and expenses from the non-prevailing party.

**24. Right of First Refusal.** If, during the Lease Term, Lessor elects to sell all or any portion of the Leased Premises, whether separately or as a part of the larger parcel of which the Leased Premises is a part, Lessee shall have the right of first refusal to meet any bona fide offer of sale on the same terms and conditions as such offer. If Lessee fails to meet such bona fide offer within seven (7) days after notice thereof from Lessor, Lessor may sell the Leased Premises or portion thereof or the larger parcel of which the Leased Premises is a part to such third party in accordance with the terms and conditions of the offer. If at any time during the Lease Term Lessor decides to sell the Leased Premises or any portion thereof or all or part of Lessor's property of which the Leased Premises is a part to a purchaser other than Lessee, then such sale shall be under and subject to this Lease and Lessee rights hereunder. Any sale by Lessor of the portion of the Leased Premises underlying the right of way and easements granted hereunder shall be under and subject to the rights of Lessee in and to such right of way and easements.

**25. Lessor Termination.** Lessor shall have the right to cancel this Lease after ~~August~~ 31, 2002 should Lessee be unable to obtain all Approvals.

**26. Removal of Existing Tower.** Lessee shall at its sole cost and expense remove and dismantle the existing tower (the "Existing Tower") located at the property within sixty (60) ~~days of the~~ completion of construction of Lessee's tower or sooner if required by regulatory authorities. Lessee hereby agrees to relocate the tenant's single whip antenna under the Existing Lease to Lessee's tower, provided that the Existing Lease is assigned to Lessee. Lessor shall retain ownership of the Existing Tower and Lessee shall stack the Existing Tower on Lessor's adjacent property after it is dismantled.

41

WO 0324

This Lease Agreement has been executed and delivered by duly authorized representatives of Lessor and Lessee as of the day and date first written above.

The following Exhibits are attached to and made a part of this Agreement: Exhibits A, B and C. The parties will execute and/or deliver, as required, any and all of the documents and/or information necessary to complete the Exhibits and record the Memorandum of Lease.

SIGNED AS A SEALED INSTRUMENT.

LESSOR:

CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC

By:_____
    Don DeCesare
    President

Address: _____
          _____
          _____

Telephone #: _____
Facsimile #:  _____

Tax I.D.: _____

LESSEE:

TOWER VENTURES, INC.

By:_____
    Robert J. Maccini
    COO

Address: 170 Westminster St.
        Suite 701
        Providence, R.I. 02903

Telephone #: 401-854-1850
Facsimile #:   401-454-3131

42

WO 0325

STATE OF CONNECTICUT
COUNTY OF_____


On the __ day of _____, 200__, personally appeared before me Don DeCesare, in his capacity as the President of the Lessor named herein, and he acknowledged that he executed this Lease as his free act and deed in such capacity and as the free act and deed of such Lessor.


_____
Notary Public
My commission expires:


STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

        On the __ day of _____, 200__, personally appeared before me Robert J. Maccini, in his capacity as the COO of the Lessee named herein, and he acknowledged that he executed this Lease as his free act and deed in such capacity and as the free act and deed of such Lessee.


_____
Notary Public
My commission expires:


43

WO 0326

**EXHIBIT A**

Site ID #: _____

The Leased Premises/Site described and/or depicted as follows:    **See Attached.**

1. Property Deed: Book _____; Page _____

2. Rough sketch and general description of site and surrounding area

3. Survey or Site Plan - The Leased Premises is generally described in a crude sketch drawing and description of the Site attached hereto.  Upon execution of this Lease, Lessor grants to Lessee the right to survey the Leased Premises at Lessee's sole cost and expense, with such a survey replacing the rough sketch and being incorporated into the Lease.   The survey shall control in the event of discrepancies between the rough sketch and the survey.

Lessor: _____

Lessee: _____

44

WO 0327

**EXHIBIT B**
**Memorandum/Notice of Lease**

Site Name: Rt. 95, Old Saybrook                          Site ID: _____

     This Memorandum/Notice of Lease evidences that a Lease dated _____, 200__ was made and entered into by and written between Crossroads Communications of Old Saybrook, LLC ("Lessor"), whose address is _____, and TOWER VENTURES, INC. ("Lessee"), whose address is 170 Westminster Street, Suite 701, Providence, RI 02903 the terms and conditions of which are incorporated herein by reference.

     Such Lease provides in part that Lessor leases to Lessee a certain Site located at 77 Springbrook Road, Town of Old Saybrook, County of Middlesex, State of Connecticut, within the property of Lessor which is described in <u>Exhibit "A"</u> attached hereto, with grant of easement for non-exclusive rights of access thereto and to electric and telephone facilities commencing on _____, 200__, and ending on the tenth anniversary of the Rent Start Date, which term is subject to four (4) five (5) year extension periods by Lessee.

     Following the cancellation, termination or expiration of the Lease, upon request Lessee will make, execute and deliver to Lessor an instrument, in form and substance reasonably satisfactory to Lessor, in recordable form, releasing this Memorandum/Notice of Lease.

     IN WITNESS WHEREOF, the parties have executed the Memorandum/notice of Lease as of the day and year first above written.

Signed, sealed and delivered in the presence of:     **Lessor:** Crossroads Communications of Old Saybrook, LLC

_____     By: _____

Printed Name: _____     Printed Name:  Don DeCesare
     Title:         President
     Date: _____
     Address: _____
         _____

Signed, sealed and delivered in the presence of:     **Lessee:**  TOWER VENTURES, INC.

_____     By: _____

Printed Name: _____     Printed Name: Robert J. Maccini
     Title:        COO
     Date: _____
     Address: 170 Westminster St., Suite 701
     Providence, R.I. 02903

WO 0328

## STATE OF CONNECTICUT

County of _____

On _____ before me, a Notary Public, personally appeared DON DECESARE, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument on behalf of the Lessor thereunder and acknowledge to me that he/she executed the same in his authorized capacity, and that by his signature on the instrument, the person, or entity upon behalf of which the person acted, executed the instrument.

_____

(Official notary signature)

My commission expires:_____

(SEAL)

## STATE OF RHODE ISLAND

County of  Providence_____

On _____ before me, a Notary Public, personally appeared ROBERT J. MACCINI, personally known to me (or provided to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument on behalf of the Lessee thereunder and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

_____

(Official notary signature)

My commission expires:_____

(SEAL)

46

WO 0329

### EXHIBIT A TO MEMORANDUM OF LEASE

That certain piece or parcel of land with the buildings thereon, located on the northerly side of Springbrook Road in the Town of Old Saybrook, County of Middlesex and State of Connecticut; being more particularly shown as parcels A and B on a plan or map entitled "Survey Map of a Portion of the Property of Long Island Sound Radio Corp., Old Saybrook, Connecticut, Scale 1" - 20', Dated January 2, 1970, Revision of 7-2-69 Map, Angus L. McDonald, Land Survey Consultants, P.C., Old Saybrook, Conn.", said plan or map to be filed in the Old Saybrook Land Records; said premises being more particularly bounded and described as follows:

BEGINNING at a point at a post corner on a steel fence on the northerly side of said Springbrook Road, which point marks the southeasterly corner of the within conveyed premises and the southwesterly corner of land now or formerly of Daniel Adanti;

THENCE RUNNING South 58° 59' 10" West by and along the northerly line of Springbrook Road one hundred twenty-one and eighty-five hundredths (121.85) feet to an iron pipe and other land now or formerly of Long Island Sound Radio Corporation;

THENCE RUNNING North 31° 00' West one hundred seventy-nine and forty-five hundredths (179.45) feet to another iron pipe;

THENCE RUNNING North 59° 11' 10" East still by and along land now or formerly of Long Island Sound Radio Corporation one hundred three and seventy-three hundredths (103.73) feet to another iron pipe and land of said Adanti;

THENCE RUNNING South 39° 40' 23" East by and along said Adanti land thirteen and fifty-three hundredths (13.53) feet to a wood fencepost; and

THENCE continuing South 37° 30' 05" East forty-seven and seventy-three hundredths (47.73) feet to an iron pipe;

THENCE continuing South 35° 54' 09" East thirty-seven and seven hundredths (37.07) feet to another iron pipe; and

THENCE continuing South 36° 16' 15" East still by and along said Adanti land eighty-one and sixty-eight hundredths (81.68) feet back to the place or point of BEGINNING.

SAID premises are conveyed together with the right, privilege and authority perpetually to maintain a ground system and guy wires for radio transmission, including the right to lay, maintain, operate, construct, alter, repair and replace the same in or through land adjacent to the land of the Grantee and immediately north and west thereof bounded with a radius of 175 feet from the base of the transmission tower as shown on parcel "B" on the aforesaid plan or map and including the area shown as within said radius on Parcel "C" of said plan or map.

ALSO the right to enter on the land within said easement at any time for the purposes of constructing, servicing, repairing or replacing said ground system or any material therein.

**Said premises are subject to:**

1) Obligations in connection with maintenance of grounds system as more fully set forth in instrument recorded in Volume 253 at Page 4 of the Old Saybrook Land Records.

2) Building restrictions as more fully set forth in an instrument recorded in Volume 253 at Page 4 of the Old Saybrook Land Records.

47

WO 0330

3) Right of first refusal in favor of Long Island Sound Radio Corporation as more fully set forth in an instrument recorded in Volume 253 at Page 4 of the Old Saybrook Land Records.

4) Any and all provisions of any public or private law, ordinance or governmental regulation, including building and zoning ordinances and wetland regulations affecting said premises, and to real property taxes due the Town of Old Saybrook on the Grand List of October 1, 1995, second half.

WO 0331

**EXHIBIT C**

Subject to all permits and approvals from all governmental agencies having jurisdiction there over, Lessee may lease or license space on the support structure(s) existing or to be developed on the Site to third parties for installation of transmission, receiving, or other types of equipment or facilities on such terms and conditions as Lessee, in its sole discretion, desires (a "Third Party Leases"), without the consent of Lessor; provided, however, that Lessee shall pay, as additional rent under this Lease, twenty five percent (25%) of all rentals, commencing with the first through and including third broadband tenant, and thirty percent (30%) for all additional tenants, but in all events excluding revenue derived from the Existing Lease (herein, the "Collocation Fees"). Such payment shall be made within five business days from the end of each month after Lessee receives payment under the Third Party Leases.

Initials:

Lessee: _____

Lessor: _____

49

WO 0332