UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC, | : : | |
| Plaintiff, | : : | CIVIL NO. 3:03CV459 (PCD) |
| v. | : : | |
| TOWER VENTURES, INC., | : | NOVEMBER 12, 2004 |
| Defendant. | : | |

**DEFENDANT'S AMENDED REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Tower Ventures, Inc. ("TVI"), submits this amended reply memorandum of law in further support of its motion for summary judgment against Plaintiff Crossroads Communications of Old Saybrook, LLC ("Crossroads").

**I.   LEGAL ARGUMENT**

**A.   Crossroads Has Not Met Its Burden Of Creating A Genuine Issue Of Material Fact**

**1.   No Reasonable Jury Could Find That TVI's Failure To File The Applications Within 45 Days Was A Material Breach Of The Contract**

Crossroads suggests that because the question of whether a breach is material or not is *generally* a question of fact, TVI's motion for summary judgment should be denied. This assertion, however, ignores the long-standing rule that summary judgment must enter for the moving party if, as here, the moving party can demonstrate that there is no genuine issue of material fact and the nonmoving party fails to come forward with enough evidence to support a jury verdict in its favor. Anderson v. Liberty Lobby, 477 U.S. 242, 255-56 (1986) (holding that where there is a factual dispute "the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding" and that summary judgment may be granted where evidence is

"merely colorable" or "not significantly probative"). A party opposing a motion for summary judgment may only create a genuine issue of fact by citing to competent, admissible evidence. Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999).

The fact that a court is faced with the question of whether an alleged breach of contract is material or not does not alter this rule: "As is true of virtually any factual question, if the materiality question in a given case admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law." Gibson v. City of Cranston, 37 F.3d 731 (1st Cir. 1994). Indeed, numerous courts have granted summary judgment when no reasonable jury could find that the alleged breach was material. See, e.g., id. at 737 ("[W]e are unable to see how a reasonable jury could find that the Committee's conduct involved matters of sufficient significance to constitute a material breach."); Keyhani v. Chance, 1988 WL 34208 (E.D. Pa. Apr. 8, 1988) (granting motion for summary judgment upon finding that no reasonable jury could conclude that defendant had materially breached settlement agreement; the breaches plaintiff alleged were trivial in comparison to the benefits received and defendants had substantially performed their obligations under the settlement agreement); White Hawk Ranch, Inc. v. Hopkins, 1998 WL 94830 (N.D. Miss. Feb. 12, 1998) (granting summary judgment upon finding that no "reasonable juror would find that the plaintiff has committed a material breach of the settlement contract").

All of the evidence here admits of only one reasonable answer – that the 45-day time limit was **not** material to the parties. After the contract was executed, Keenan Brinn of TVI began working on obtaining the required approvals. (56(a)(1) Statement, at ¶ 11.)[1] Donald DeCesare, Crossroads' president, testified that he had "no specific knowledge" of what was required in order to submit

---

[1] Crossroads does not dispute this fact.

applications for the required approvals at the time that he signed the contract. (DeCesare, at 77.)[2] His general knowledge of the process was only that "plans would have to be drawn and they would have to be taken to the town and the town would have to then pass on those plans." (Id.) Mr. DeCesare did not know how long the process would take.

> Q. And that period of time, October, November of 2001, you didn't know what was necessary to obtain to file [the required applications]?
> A. I never presented myself as an expert in obtaining those things.
> Q. So it's fair to say you didn't know what was necessary?
> A. That's correct.
> Q. Nor did you know how long it would take to get whatever was necessary?
> A. That's correct.

(Id. at 110.)

Both TVI and Attorney Childress believed that the time required for the filing of the applications would be significantly shortened because only one application for a building permit should have been required because a tower already existed on the property for which a variance had been obtained. (56(a)(1) Statement, at ¶¶ 14, 37.)[3] Mr. DeCesare testified that he had no knowledge of what having to file only one application for a building permit versus numerous applications to obtain a zoning variance would have meant to the process. (DeCesare, at 79.)

Mr. DeCesare testified that although he was aware of the fact that TVI had not applied for all approvals within the 45-day time period that he never told TVI that he believed TVI was in breach. Nor did Mr. DeCesare send any written communication to TVI notifying TVI that it was in breach prior to TVI's termination of the agreement. (56(a)(1) Statement, at ¶¶ 18-21.)[4] Crossroads never demanded adherence to the 45-day time frame, and never communicated to TVI that TVI was in

---

[2]   A copy of Mr. DeCesare's deposition transcript is attached to TVI's moving papers as Exhibit C.
[3]   Crossroads does not dispute these facts.
[4]   Crossroads does not dispute these facts.

breach of the agreement at any point prior to TVI's rightful termination.  (Id. at ¶¶ 22-23.)[5]

Rather, Crossroads cooperated with TVI every step of the way from at least November 2001 until the time that TVI terminated the contract.  Mr. DeCesare attended the various hearings at which applications were pending and even made a presentation to one board.  (56(a)(1) Statement, at ¶¶ 28-31, 34-35, 39, 43.)[6]

> Q.  But in any event, is it fair to say that during December, January, February, March, April, May, that you worked with Tower Ventures in processing whatever applications were necessary, providing whatever materials was [sic] necessary to the various agencies of the town of Old Saybrook?
> A.  I had a strong desire to be as helpful as I could be and did everything that I reasonably thought I could do to help, yes.
> Q.  And so it's fair to say you worked with Tower Ventures in trying to complete this process?
> A.  Yes.

(DeCesare, at 80.)

Mr. DeCesare further testified that although he expressed concerns about the pace at which things were proceeding, Attorney Childress assured him that he was doing the best that he could and asked Mr. DeCesare to "bear with [him]."  (Id. at 81-82.)

> Q.  Did he say things, something like these things take time and you're just going to have to wait until the commissions meet and we get a chance to be heard?
> A.  I'm not sure he put it in exactly those terms.  I'm certain that he said to me, you know, just bear with me, I'm doing this the way it needs to be done, something to that effect.

(Id. at 82.)  Indeed, Mr. DeCesare admitted that TVI and Attorney Childress were doing all that needed to be done in order to obtain the necessary approvals:

> Q.  And to the best of your knowledge, what TVI and Childress were doing was complying with Old Saybrook requirements in order to get whatever permit approvals that were necessary?
> A.  I suppose, yes.

(Id.)

---

[5]  Crossroads does not dispute these facts.
[6]  Crossroads does not dispute these facts.

Thus, it is undisputed that (1) at the time that the contract was executed, TVI believed that only one application for a building permit would have to be filed, which would have significantly shortened the amount of time necessary to prepare and file the necessary applications; (2) this belief was shared by Attorney Childress; (3) Mr. DeCesare had no understanding of what applications were necessary, what information was necessary, or how long it would take to file such applications; (4) TVI and Attorney Childress worked diligently to obtain all necessary approvals in the manner and pace at which they needed to be obtained; (5) Crossroads was aware at all times of the pace at which the process was proceeding; (6) Crossroads continued to work closely with TVI in order to obtain the necessary approvals up until (and after) TVI terminated the contract; and (7) Crossroads never once objected to TVI's failure to obtain all of the necessary approvals within the 45-day period set forth in the contract until *after* TVI terminated the contract. Mr. DeCesare's lack of knowledge as to the procedures and process of filing applications and getting permits and approvals demonstrates that the 45 days could not have been material. Viewing all of these undisputed facts as a whole, no reasonable jury could find that the parties considered the 45-day time limit to be material.

> 2. **There Are No Issues Of Material Fact With Respect To The Parties' Expectations Relating To The 45-Day Time Limit Because Mr. DeCesare's Affidavit Conflicts With His Deposition Testimony And Should Be Disregarded By The Court**

Crossroads suggests that there are issues of material fact concerning the expectations of the parties upon entering into the Agreement and their purpose in entering into the Agreement. (Plaintiff's Statement of Disputed Material Facts.) In support of this contention, Crossroads cites to Paragraphs 7-9 of Mr. DeCesare's Affidavit, in which Mr. DeCesare asserts that he requested that the time period be inserted into the contract, that he initially demanded a 30-day period but the parties ultimately agreed to 45 days, and that he considered this time limit to be "an essential and important

term of the parties' agreement." This is in direct conflict with his deposition testimony, however, where he testified that he did not know which party requested this clause:

> Q. So is it fair to say in point of fact that the 45 days didn't have any real meaning to you?
> A. No, it's not fair to say that at all. It had a definite meaning to me. We negotiated it into the agreement. Tower Ventures negotiated long and hard on getting different clauses into the agreement, including that one. ***So when I agreed to it, I took it to be meaningful***.
> Q. Are you saying Tower Ventures wanted the 45 days in the agreement?
> A. I'm saying in the negotiations to get the agreement, just about every clause that's in there was negotiated long and hard, back and forth, and I would include that one among them.
> Q. And was that a clause that you wanted, that Crossroads wanted in the contract?
> A. ***I don't know who initiated the idea of having an expiration clause***, but we certainly did go back and forth about it.

(DeCesare, at 111 (emphasis added).)

A party may not create an issue of fact by submitting an affidavit in opposition to a motion for summary judgment that, by omission or addition, contradicts the affiant's previous deposition testimony. Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would pretty much diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. at 578. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial. Id. In Parma, the Second Circuit recognized that a deposition of a witness that has been subject to cross-examination is generally more reliable than an affidavit submitted to oppose a summary judgment. Id.

At his deposition, Mr. DeCesare testified that he did not recall which party requested the time limit for the filing of the applications, and further testified that he took the 45-day time limit to be "meaningful" simply because it was a negotiated term. This is quite different from the assertions

made in his affidavit, in which he asserts that he requested the time limit, that he initially requested 30 days instead of 45, and that he considered the term to be "essential and important."[7] These assertions plainly contradict his sworn deposition testimony and should be disregarded by the Court. As such, Crossroads has not established that the 45-day time limit was a provision that it specifically bargained for or that it was a benefit that it expected in order to support its assertion that the 45-day term was material. Quite to the contrary, the evidence points only to the fact that this provision was immaterial to both parties. Accordingly, TVI is entitled to summary judgment.[8]

### 3. All Of The Approvals Could Not Have Been Applied For Within 45 Days, Therefore, Pursuant To The Contract's Terms, The Time Limit Does Not Even Apply

Perhaps most importantly, the 45-day time limit is not an operative portion of the contract because "all approvals, permits, variances, consents, waivers, filings . . . which are required for and/or otherwise facilitate the construction and operation . . ." could not have been obtained in 45 days. (Agreement, Exhibit A.) The operative clause governing when such approvals must be obtained appears in Section 1 of the contract and reads as follows: ". . . excluding only those Approvals which by their terms cannot be applied for within such 45 day period and/or until other Approvals are first obtained, provided that such subsequent Approvals shall be applied for as expeditiously as possible, and TVI and [sic] shall thereafter use its best efforts diligently to obtain all such Approvals." With respect to approvals which could not be obtained within 45 days, what was

---

[7]     "Meaningful" does not mean "essential and important." However, even if the Court were to accept Mr. DeCesare's belated assertion that he viewed the term as "essential and important," it is belied by his actions after the 45-day time period had passed and before TVI terminated the contract.

[8]     Crossroads also argues that there is an issue of fact regarding its contention that "having caused delay, in violation of a contractual duty," TVI could not then terminate the contract. (Opposition Brief, at 10-11.) First, the assertion that Crossroads "caused delay" is wholly unsupported by the evidence, which establishes that Crossroads initially believed (and Attorney Childress agreed) that only one application for a building permit would be necessary, that Crossroads began to work on getting the necessary approvals soon after the contract was executed, and by Mr. DeCesare's own admissions that TVI and Attorney Childress were doing everything required to obtain the necessary approvals. Second, this assertion flies in the face of the plain language of the contract, which allowed TVI to terminate the contract if the Conditions Precedent were not fulfilled and if TVI was not in material breach, which it was not.

required was that TVI use "its best efforts diligently to obtain all such Approvals" which is undisputedly what TVI did. Mr. DeCesare does not dispute or put into issue either that TVI "act[ed] as expeditiously as possible" or that it used anything but its best efforts in attempting to obtain all approvals necessary for the construction of the communications tower.

When one considers that Mr. DeCesare has admitted that he had no knowledge as to the procedures or the process for filing applications and getting permits and approvals, coupled with the contractual exclusion from the 45-day time limit for obtaining those approvals which by their terms could not be applied for within 45 days, there are no disputed genuine issues of fact. TVI was not in material breach of the contract.

> B.   **TVI's Waiver Argument Is Not Precluded By The Contract**

The contractual provision that Crossroads contends precludes TVI's waiver argument was clearly not intended to apply to any right of one party to claim that the other party breached the contract *after* the contract has been rightfully terminated. (Agreement, at ¶ 9(f).) Once a contract is rightfully terminated, neither party has rights under that agreement.

TVI's waiver argument, set forth more fully in its initial brief, speaks directly to the only reasonable construction of Crossroads' conduct up until the time that TVI rightfully terminated. Crossroads was absolutely silent after the 45-day time limit passed. Crossroads did not have an understanding of what was involved in filing all of the applications. Crossroads knew at all times the progress that was being made and the pace at which the process was proceeding. And it was not until TVI rightfully terminated that Crossroads objected to the failure to file the applications within 45 days. Whether viewed as a waiver of its right to object to the failure to meet the 45-day time limit, or a modification of the contract, Crossroads' own conduct plainly evidences that it did not view the 45-day time limit as material.

### C. There Are No Genuine Issues Of Material Fact With Respect To Crossroads' CUTPA Claim

Crossroads asserts that TVI's offer to renegotiate terms of the agreement after its rightful termination raises an issue of genuine issue of material fact relating to its CUTPA claim. (Opposition Brief, at 17.) This is absurd. If, as the evidence establishes here, TVI had the right to terminate the contract (i.e., if TVI was not in material breach of the contract), then TVI had every right to seek to renegotiate the contract in order to salvage some part of the relationship between the parties. As the Second Circuit has aptly observed, a party seeking to renegotiate a contract's terms because it is losing money "is precisely the standard reason for a breach and offends no particular public policy." Boulevard Assocs. v. Sovereign Hotels, 72 F.3d 1029, 1039 (2d Cir. 1995). Here, TVI was not even in breach of the contract when it sought to renegotiate.

As this Court noted in its ruling on the motion to dismiss, "Plaintiff must still show that a deception or violation of public policy occurred which gave rise to substantial aggravating circumstances surrounding the breach." (Ruling, at 9.)[9] Crossroads has simply not made this showing.

### D. TVI Is Entitled To Summary Judgment On Crossroads' Good Faith And Fair Dealing Claim

Crossroads asserts that TVI attempted to terminate the contract in order to renegotiate the terms of the contract and that this is sufficient evidence of TVI's bad faith to survive summary judgment. (Opposition Brief, at 19.) For the reasons set forth above and in TVI's initial brief, it is not. TVI was absolutely entitled to seek to renegotiate the terms of an agreement that it no longer found to be favorable, particularly after it rightfully terminated said agreement.

---

[9] The Court stated in its Ruling that Plaintiff alleged that all approvals were applied for and received. (Id.) To clarify, all local approvals had been applied for at the time that TVI terminated, but not all had been received, which meant that the Conditions Precedent had not been met and TVI could terminate if not then in material breach. (See also Initial Brief, at 22-24.) Crossroads does not dispute this. (See, e.g., Opposition Brief, at 2.)

9

Crossroads has also raised no genuine issues of material fact with respect to TVI's conduct during the application process. Indeed, Mr. DeCesare admitted that TVI acted in good faith during this process and that TVI and Attorney Childress were doing all that needed to be done in order to obtain the necessary approvals. (DeCesare, at 73, 82.) The fact that the process ended up taking longer than Mr. DeCesare anticipated – a process that Mr. DeCesare admits he knew nothing about – is irrelevant. Crossroads has not met its burden of raising a genuine issue of material fact such that a reasonable jury could find "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation . . . prompted by . . . some interested or sinister motive," as required under Connecticut law. Habetz v. Condon, 224 Conn. 231, 237 (1992). Accordingly, TVI is entitled to summary judgment.

## II.  CONCLUSION

For the foregoing reasons, and for the reasons set forth more fully in its initial memorandum of law and supporting papers, Tower Ventures, Inc. respectfully requests that its motion for summary judgment on Counts One, Three and Four of the Complaint be granted.

        DEFENDANT
        TOWER VENTURES, INC.

By_____
   Steven R. Humphrey (ct06053)
   shumphrey@rc.com
   Elizabeth R. Leong (ct24453)
   eleong@rc.com
   Robinson & Cole LLP
   280 Trumbull Street
   Hartford, CT  06103-3597
   Tel.:  (860) 275-8200
   Fax:  (860) 275-8299

## **CERTIFICATION**

      This is to certify that a copy of the foregoing was served via facsimile and first-class mail on this 12th day of November, 2004, to the following:

David T. Grudberg, Esq.
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange Street
P. O. Box 606
New Haven, CT 06503-0606

                                                                                             _____
                                                                                             Steven R. Humphrey