UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CROSSROADS COMMUNICATIONS OF OLD SAYBROOK, LLC,<br>　　　　Plaintiff,<br><br>vs.<br><br>TOWER VENTURES, INC.,<br>　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 3:03cv00459 (PCD) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff and defendant entered into a contract, Ex. A to Defendant's Memorandum, by which a communication tower was to be erected by defendant on land of plaintiff to be leased in turn to defendant. Defendant notes certain undertakings therein required but not fulfilled by July 31, 2002. On that basis, as purportedly permitted in the contract, and absent any material breach of the contract by defendant, defendant claims to have terminated the contract, as its lawful right, on August 7, 2002. Plaintiff's complaint alleges defendant's breach of the contract, unfair trade practice, breach of implied covenants of good faith and fair dealing. Pursuant to Fed. R . Civ. P. 56, Defendant move for summary judgment on all Counts of the Complaint. For the reasons stated herein, Defendant's Motion [Doc. No. 41] is **denied**.

**I.　　BACKGROUND:**

From the parties' Memoranda, the following are facts not in dispute. The contract called for Tower Venture Inc. ("TVI")  to construct a tower to replace an existing tower on plaintiff's property, approvals of which were to be obtained by TVI with plaintiff's

cooperation. TVI was to apply to all the government entities, departments and agencies for such no later than 45 days after the contract execution, September 20, 2001, excepting certain approvals to be applied for as soon as possible, all to be pursued as diligently as possible.  Financial terms of the agreement are not germane to the motion. "Conditions Precedent" were identified and if not satisfied by July 31, 2002, each party, if not in material breach,  was entitled to terminate, and thus void all contractual obligations.

  As a variance permitted the existing tower, TVI claims to have contemplated no need to obtain such for the new tower and only a building permit would be required.  The application process was undertaken but did not progress to filings by the 45 day requirement. The first note of a contact by Mr. Brinn with the Town Planner occurred in November, 2001. Mr. DeCesare, President of plaintiff, was involved in the application process being pursued by Mr. Brinn for TVI.  Mr. DeCesare knew the 45 day time limit, approaching and passed, intending to see if any damage resulted.  He did not assert a breach of the contract by TVI, then or prior to August 5, 2002.  Rather he continued to work with TVI in the application process until TVI announced its termination.  In November, 2001 the Town Planner suggested to Mr. Brinn a change in the tower configuration, which TVI claims would have required a changed tower location and eliminated a guyed wire on abutting property. Though not involved in discussing the configuration change, Mr. DeCesare agreed to the change, though a delay in the process would be involved.

  In December, 2001, the town Enforcement Officer advised that a variance would likely be necessary.  TVI sought, unsuccessfully, to obtain approval of the tower via a building permit.  An experienced zoning attorney was then retained by TVI  to assist in

seeking a variance, for which an application was initiated. The application was heard on April 10, 2002, Brinn and Decesare attending, and was granted. The attorney applied for approval of a site plan and special permit in May, 2002 and a hearing was scheduled for August 19, 2002. Two necessary recommendations were obtained in July, 2002 after appearances before the agencies in question by the attorney and Mr. DeCesare. No evidence of requests for expedited hearings or decisions is noted.

On August 7, 2002, TVI noticed, by letter, it termination of the contract for want of the meeting of all the Conditions Precedent. Plaintiff responded by asserting the termination was not effectual as TVI was in material breach of the contract in its failure to apply for and obtain all approvals. TVI agreed to proceed with the special permit application and hearing without waiving its right to terminate the contract. After a continued hearing, the Zoning Commission approved the permit on September 3, 2002. There remained an FAA clearance and Siting Council approval which the attorney decided was best to await the local approvals, noting the latter could be sought when telecommunication facilities were attached to the tower.

Plaintiff claims disputed issues of fact as to whether TVI's termination was asserted in good faith, whether the failure to obtain approvals reflected the required diligence in seeking to obtain same, whether TVI's failure to obtain same constituted a breach of the contract on its part and whether its breach was material. It claims that TVI's president (Maccini) conceded that its asserted contract termination was motivated by an intent to seek more advantageous terms in a renegotiation. See Termination Letter, Ex. B.2, Defendant's Memorandum.

**II.   STANDARD OF REVIEW:**

TVI, having moved for Summary Judgment, Fed. R. Civ. P. 56(c), has the burden of showing "that there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  It must show that there is no evidence which would support plaintiff's claims. Miller v. Wolpoff & Abramson, L.L.P., 321 F. 3d 292, 300 (2d Cir. 2003).  In weighing the record provided, all ambiguities and reasonable inferences must be drawn in favor of the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).  Issues of credibility aside, if there is any basis in the record on which the facts could be found in favor of the nonmovant, summary judgment would be inappropriate.

**III.   DISCUSSION:**

It is undisputed that no application for any approval was filed within the 45 days. TVI initially assumed, erroneously, that it could achieve approval by obtaining a building permit.  Its first inquiry in this regard appears to have occurred in November, 2001, close to if not after the 45 days.  It pursued that effort in the face of an early indication, from the Planner, that a variance would be required.  Over a month passed before an effort was made to get the enforcement officer to accept the building permit approach to approval.  The first step in seeking a variance occurred sometime before April, again long after the 45 days.  At the time of TVI's assertion of a right to terminate the contract, on August 7, 2002, a required permit, other than a building permit, had not been obtained, nor had Siting Council approval or FAA clearance been obtained.  Whether either was an obstacle to construction of the

tower presents a question of fact. Defendant's Ex. F, 16-18. 68.

Mr. Brinn asserts a failure of plaintiff to produce an FAA "no hazard" letter that was requested, apparently verbally, an assertion disputed by Mr. DeCesare. The assertion is irrelevant as, even if true and an issue of fact is involved, it would not appear to have been determinative but merely helpful, with respect to the site survey and acquisition of the zoning approvals. TVI requested the letter directly from the FAA on November 6, 2001. The letter was described as a source of tower coordinates but a differently designed tower would be relocated on the site. Further as the tower height was to be less than 200 feet, an FAA clearance would not seem to have been required. Ex. D to Defendant's Memorandum (Maccini deposition) at 148-49.

TVI asserts that when it terminated, it was not completely satisfied with a Due Diligence review. This is a grasping at straws claim without merit. The termination letter states:

> TVI hereby terminates the Agreement due to the fact that notwithstanding TVI's diligent best efforts to obtain the same, TVI has not been able to obtain all of the approvals, and thus the Conditions Precedent have not been satisfied.

There is no reference to satisfaction of the Due Diligence provision. The record does not warrant a finding of dissatisfaction with the Due Diligence review nor any suggestion of TVI's efforts nor findings in that regard. The motion will not be considered validly founded on that assertion.

TVI claims that because all of the Conditions Precedent were not met as of July 31, 2002, it was entitled to terminate the contract. Fulfilling the conditions was the responsibility of TVI. When considering the respective rights of the parties, it is not

insignificant that TVI relies on a factual situation solely in its control.  Unquestionably the conditions were not met, but that is not the full answer to TVI's claim.  There is the fact that TVI was obliged to pursue the approvals with two time considerations, the first being the 45 days and the second was at least implicitly the pursuit of the approvals with some degree of diligence.  TVI claims only to have performed in good faith but would be excused on the basis of plaintiff's not having asserted its noncompliance and thus having waived any right to enforce TVI's timely performance as to the approvals.  The question of a waiver presents a question of fact since the mere non-assertion of a right to a timely performance is not necessarily sufficient to establish a waiver, i.e an intentional relinquishment of a known right.  <u>Novella v. Hartford Accident and Ind. Co.</u>, 163 Conn 552, 561 (1972).  Further creative of a question of fact in this regard is the assertion by Mr. DeCesare that he was aware of the time delinquencies but decided to wait to see if any damage resulted.  That he was entitled to do since if TVI was in breach, as plaintiff was not immediately obliged to call a halt to the contract but could permit continued performance and seek damages for any resulting delay.  TVI's claim further flies in the face of a contractual non-waiver provision.  <u>See</u> Agreement ¶ 9(f).

  In addition, if TVI had breached the contract, it claims that such was not material.  Again a question of fact would be presented as materiality is determined by the significance of strict performance with a contract's terms to the party benefitted thereby as to which the Restatement is illuminating.  Restatement (Second) Contracts § 241.  TVI emphasizes the want of frustration of plaintiff's expectations, an ingenuous claim since plaintiff sought to obtain a replacement tower and the revenue to be derived therefrom, a result totally

unachieved as a result of TVI's failure to meet its responsibility of obtaining the necessary approvals. The timeliness of TVI's performance is self-apparent but is buttressed by Mr. DeCesare as sufficiently important to be material, thus presenting an issue of fact. While plaintiff's failure to assert, immediately, TVI's breach when the 45 days passed and when the approval process was dragged out, could be relevant to the issue of TVI's performance in compliance with the contract terms, plaintiff's conduct in that respect would not be determinative as to the claims of waiver nor materiality but would leave questions of fact to be determined by the jury. TVI's claim that its continued efforts, to at least August 7, 2002, reflected its good faith effort to perform is countered by the motivation to improve its position financially that could be found to underlay the termination. As said by commentators, "[m]ateriality of a breach is ordinarily a question of fact." Calamari & Perillo, The Law of Contracts, § 11-18(a) (3d Ed. 1987); Williston On Contracts, § 63:3, 440-41, n.34 (4th Ed. 2002). TVI's delay in initiating the approval applications, its reliance solely on obtaining a building permit, the time lags between steps in pursuit of agency actions and its motivation in announcing the termination, as well as perhaps others, present questions of fact unresolved in the record as to whether its contract efforts constituted good faith and fair dealing. TVI points to segments of Mr. DeCesare' deposition and his attitude throughout of seeking to bring about the approvals so that the tower could be built. Contrary to its argument, TVI's burden is to show there are no genuine issues of material fact. Plaintiff cannot stand idly by in the face of a motion but the ultimate burden of proof lies with TVI.. That Mr. DeCesare regarded the time factors as significant is reflected in several observations in his deposition, one being:

> Q. So is it fair to say in point of fact that the 45 days didn't have any real meaning to you?
> A. No, its not fair to say that at all. It had a definite meaning to me.

Ex. C, DeCesare Depo. at 111. TVI would have the court ignore evidence supportive of plaintiff's claim. That the court is not entitled to do in deciding the existence of a question of fact.

TVI argues that CUTPA liability cannot be imposed on it because it "validly terminated the contract [ ] and never acted unfairly or in a deceptive way," Defendant's Memorandum at 20, a highly conclusory assertion. Though a simple breach of contract would not be within the criteria for a CUTPA claim, substantial aggravating circumstances attending the breach would sustain such a claim. Merely withholding rent due to financial circumstances while seeking to renegotiate the lease has been held insufficient for a CUTPA claim. Boulevard Associates v. Sovereign Hotels, 72 F.3d 1029, 1038 (2d. Cir. 1995), (quoting Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 239 (1987). Mr. DeCesare's assistance in its efforts to obtain approvals and his equivocation as to whether TVI was doing all required of it to obtain the approvals is not controlling. Obviously Mr. DeCesare wished the approvals to be obtained, the tower erected and rentals commenced. His tolerance of the delays is not, as a matter of law, absolving of all claims against TVI. The pace, and order, at which TVI, and its attorney, pursued approvals constitute circumstances, the character of which, with the decision to terminate while offering to continue at better terms, plaintiff claims support the CUTPA claim. See Bridgeport Restoration Co., Inc. v. A. Petrucci Construction Co., 211 Conn 230 (1989); Lester v. Resort Campland International, Inc., 27 Conn. App. 57 (1992). TVI relies on Boulevard Associates

v. Sovereign Hotels, 72 F.3d 1029, 1038-39 (2d Cir. 1995) wherein the Second Circuit ruled that a mere breach of contract is not a basis for a CUTPA claim, citing several Connecticut Superior Court decisions and alluding to Lester which involved aggravating circumstances surrounding the breach thus leaving open the question of what circumstances would permit a CUTPA claim. Id. at n. 5.  To terminate to avoid the contract obligations because expected profit is unlikely has a less sanguine quality than a termination due to inability to perform contract obligations.  If that were the only circumstance, Boulevard might be persuasive but it is not.  If TVI had a right to terminate, it was the result of its conduct in seeking the approvals.  It could be found to have acted less than expeditiously and without full consideration of alternatives.  While its advice might well, in a vacuum, have been sound, legally and tactically, it is not shown to have nodded at all to the contract time constraints.  To have assumed that only a building permit was needed did not accommodate the possibility of a need for a variance that could have been very quickly detected and pursued.  The three months before hiring an attorney to pursue the matter, the one month before contact with the enforcement officer and the two months before seeing the town planner all suggest less than alacrity.  With the fact that TVI's conduct substantially resulted in the absence of approvals by the deadline relied on for the right to terminate, enough circumstances have been placed in the record by plaintiff to avoid this being a simple breach of contract as a basis for the CUTPA claim.

  All contracts impliedly require a party's performance to meet the standard of good faith and fair dealing.  Warner v. Konover, 210 Conn 150, 154-56 (1989); Magnan v. Anaconda Industries, Inc., 193 Conn 558, 566-67 (1984).  On the basis of the facts asserted

9

by plaintiff in support of its CUTPA claim, it is a question of fact as to whether TVI's pursuit of the approvals in the face of the contract timing provisions, denied plaintiff's expectation of the contract performance, was in good faith and fair dealing or if it is properly to be found to have been in bad faith. Warner, 210 Conn at 155-56.

### IV.  CONCLUSION:

Viewing the evidence in plaintiff's favor and drawing the inferences reasonably in favor of plaintiff, it cannot be said that there is no question of fact as to any of plaintiff's claims. Rather there are questions of fact, as discussed above, which a jury could resolve in plaintiff's favor and thus TVI cannot be said to be entitled to judgment as a matter of law. Accordingly TVI's Motion for Summary Judgment [Doc. No. 41] is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut this 17th day of November, 2004.

/s/
PETER C. DORSEY
UNITED STATES DISTRICT JUDGE